436 A.2d 203

**Selma HARRIS and Renee Greenberg**

v.

**ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN and Northwestern National Life Insurance Company.**

**Appeal of NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed Oct. 9, 1981.

Petition for Allowance of Appeal Denied Jan. 22, 1982.

452

Peter C. Paul, Philadelphia, for appellant.

Daniel E. Bacine, Philadelphia, for appellees.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Appellees are co-administratrices and sole heirs of decedent, Rose Weinberg. Mrs. Weinberg was employed by St. Christopher's Hospital for Children (hereinafter "St. Christo-

pher's") until September 29, 1975. During the term of her employment, St. Christopher's maintained a plan of life insurance under a group policy with Northwestern National Life Insurance Company (hereinafter "Northwestern"). The policy was in St. Christopher's name. Under the terms of the policy, Mrs. Weinberg was entitled, upon termination of her employment, to convert her coverage under the group policy to coverage under an individual policy, by applying for and paying the applicable premium within thirty-one (31) days after termination of her employment. Evidence of insurability is not required. The policy also provides that if the insured dies during the thirty-one day period, the amount of life insurance the insured would have been entitled to convert will be paid as a claim under the group policy, regardless of whether or nor the insured made application and paid the first premium for the individual policy.

If the insured is not notified of the conversion privilege at least fifteen days prior to the expiration of the thirty-one day period, the insured is entitled to an additional sixty day period in which to exercise such right.[1] Thus, the decedent had a total of 91 days in which to exercise her conversion privilege, or until December 30, 1975. Mrs. Weinberg never received written notice of her right to convert her policy, however, and died December 9, 1975, 71 days after termination of her employment, without converting her policy.

Appellees aver that they are the beneficiaries of their mother's policy. They argue that their mother's death within the 91 day statutory period may be deemed equivalent to the exercise of her right of conversion. It was under this theory that they sought recovery of the amount of insurance to which they claim their mother would have been entitled under an individual policy. The case was tried before an arbitration panel, who awarded appellees the sum of $2,833.99 plus interest. Both St. Christopher's and Northwestern appealed from the award.

Thereafter, all of the parties filed motions for summary judgment. The lower court entered an order in favor of

1. See Act of May 11, 1949, P.L. 1210, § 7, 40 P.S. § 532.7.

appellees and against both the employer, St. Christopher's, and the insurer, Northwestern.[2] The appeal concerns Northwestern only.

The central issue for our determination is whether decedent's death 71 days after termination of her employment without her conversion of the group policy to an individual one may be deemed an exercise of the conversion privilege. The lower court held that death within the extended conversion period provided by 40 P.S. § 532.7 is equivalent to conversion. We affirm.

40 P.S. § 532.7 provides:

§ 532.7 Notice of conversion privileges.

If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of the first premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen days prior to the expiration date of such period, then, in such event the individual shall have an additional period within which to exercise such right, *but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy.* This additional period shall expire fifteen days next after the individual is given such notice but in no event shall such additional period extend beyond sixty days next after the expiration date of the period provided in such policy. Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder shall constitute notice for the purpose of this section.

Northwestern contends that there was no insurance coverage on the life of Rose Weinberg at the time of her death.

2. Subsequently, St. Christopher's settled with appellees and withdrew its appeal.

It is Northwestern's position that 40 P.S. § 532.7 specifically provides that life insurance coverage does not continue beyond the period of time set forth in the policy. Northwestern bases its position upon the following proviso contained in the statute:

[b]ut nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy.

The fact that Mrs. Weinberg was not given any notice of her conversion privilege did not, argues Northwestern, extend her insurance *coverage* under the policy; it only extended the time during which she could have exercised the conversion privilege.

The conversion privilege contained in decedent's insurance policy states:

CONVERSION PRIVILEGE: An Insured may purchase an individual policy of life insurance from the Company if all or part of his Life Insurance terminates because of termination of active work or membership in a class or classes eligible for coverage or because of any reductions in the Amount of Life Insurance in accordance with the Schedule of Benefits. Evidence of insurability is not required. The Insured must apply for the individual policy and pay the applicable premium within 31 days after termination of his Life Insurance. The individual policy will be a participating policy, without disability or other supplementary benefits, in any one of the forms customarily issued by the Company at that time, at the option of the Insured, except term insurance. The amount of life insurance under the individual policy may be equal to or less than the amount of insurance terminated, at the option of the Insured. The premiums for the individual policy will be determined by the class of risks to which the Insured belongs and the form and amount of the policy at his then attained age.

*  *  *  *  *  *

An individual policy of life insurance issued under this provision will be effective at the end of the 31 day period

during which application for the individual policy may be made.

The amount of life insurance an Insured would have been entitled to convert under this provision, if any, will be paid as a claim under the Group Policy if he dies during the 31 days immediately following termination of his Life Insurance. This amount will be paid whether or not the Insured made application and paid the first premium for the individual policy.

[It is clear that there must be consideration for the new, individual policy. The insured *purchases* the individual policy, and thereafter pays the applicable premium amounts.]

The essence of the privilege lies in the fact that the insured does not have to produce evidence of insurability, which would otherwise be required.

This fact is very significant to an older employee such as Rose Weinberg, who was 61 and in ill health when her employment was terminated. There can be no doubt that under normal circumstances, an older individual in failing health has a difficult time obtaining life insurance. In recognition of this fact, insurance companies offer terminated employees the opportunity to continue their insurance coverage under an individual policy without producing evidence of insurability.

■ Here, company's clear responsibility, as delineated by the statute, was to notify the insured of her conversion privilege. The consequence of its failure to notify was to be exposed to the risk that insured would convert during the additional sixty-day period. 40 P.S. § 532.7. Yet if the statute is interpreted so illiberally as appellant insurer contends, then the only burden on an insurer failing to notify would to be face the risk that an insured would research the law during the additional sixty-day period and find rights that are in no way suggested by her policy, or, equally unlikely, that an insured would send an appropriate application and premium payment without firm evidence of eligibility at the time. Such a misallocation of minimal risks to the

insurer and burdens on the insured could hardly have been the intent of the legislature, especially in a consumer protection statute. *Jones v. Metropolitan Life Ins. Co.*, 156 Pa.Super. 156, 39 A.2d 721 (1944). A notice provision which in effect requires an insured to do research beyond even the fine print of her policy would be an absurd result, and it is a fundamental rule of statutory construction that the legislature does not intend an absurd result. *Schaefer v. Hilton*, 473 Pa. 237, 373 A.2d 1350 (1977).

 It is equally well settled that a contract of insurance will, if possible, be so construed as to protect the insured and any doubt will be resolved in favor of the insured. *Armstrong v. John Hancock Mutual Insurance Company*, 164 Pa.Super. 507, 511, 66 A.2d 468, 470 (1949), quoting *MacDonald v. Metropolitan Life Insurance Company*, 304 Pa. 213, 218, 155 A. 491, 492 (1931). As the court below stated:

> If we agree with the construction favored by [Northwestern], we would be giving ex-employees little protection. The conversion period would be extended, but if an ex-employee died before exercising that right, which he did not even know he possessed, his beneficiaries would be denied recover of life insurance proceeds.

We agree with the court's reasoning. To hold otherwise would undermine the intent of the notice provision, which is to protect terminated employees.

Here, the insured died within the total 90-day period. Had she died at a later time, not within the 90 days, then our holding would be different. See *McGinnis v. Bankers Life Co.*, 39 App.Div. 393, 334 N.Y.S.2d 270 (1972).[3]

Accordingly, we hold that the death of an insured during the additional period provided by 40 P.S. § 532.7 gives rise to

---

3. *McGinnis* concerned a factual situation in which an ex-employee failed to convert his group life insurance policy to an individual one within the 90-day period. New York's conversion privilege statute is in all relevant parts identical to 40 P.S. § 532.7. See N.Y. Insurance Law § 204(3) (McKinney). No notice was given to the insured of the conversion privilege. The court held that since the insured died *more than* 90 days after termination, all rights under the policy had expired and the insurer was not liable to the beneficiary.

458

a right of payment. For these reasons, we affirm the order of the lower court.