468 A.2d 1107

In re ESTATE OF Bridget DEMBIEC, Deceased,

Appeal of Henrietta THIER, Theresa Fennick, Elaine Meyers, Leon Raykovitz, Harold Raykovitz, Helen Hoffman, Louise Bilahorka, Edward Hendricks and Leonard Hendricks, Appellants,

v.

Mary BOCZAR, Administratrix.

Superior Court of Pennsylvania.

Argued March 24, 1983.

Filed Nov. 10, 1983.

Joseph G. Albert, Wilkes-Barre, for appellants.

Richard James Confair, Wilkes-Barre, for appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

This case concerns the ownership of the monies in two savings accounts on deposit at the Northeastern Bank of Pennsylvania in Wilkes-Barre, Pennsylvania.

Prior to August 1979, both accounts were solely owned by Bridget Dembiec. On August 31, 1979, Mary L. Boczar returned an executed signature card to the bank, to have the first of Miss Dembiec's accounts converted to joint ownership. Then on October 9, 1979, Miss Dembiec affixed her mark to a second signature card and the second account was converted to joint ownership. Miss Dembiec (hereinafter decedent) passed away intestate on October 10, 1979.

At the time of decedent's death, both accounts were titled in her name and that of her sister, Mary L. Boczar. The balances in each of the two accounts when decedent died were $58,957.65 and $56,726.72. Shortly after decedent's death Mrs. Henrietta Thier, an appellant herein, petitioned Orphans' Court contending that the balances of the accounts did not belong to Mary L. Boczar, appellee herein, and seeking to have the accounts inventoried as part of the decedent's estate and distributed to the intestate heirs.[1] After a hearing on the merits of the petition, Orphans' Court decreed that the monies on deposit belonged to appellee. Whereupon this appeal followed.

The decree of Orphans' Court was based on the testimony of several witnesses. Based on the evidence of decedent's intent presented in the deposition testimony of decedent's attorney, Ralph Johnston, Sr., coupled with the testimony of a Northeastern Bank employee, one Joan Dougherty, Orphans' Court concluded that the evidence did not clearly and convincingly show that decedent did not intend to create a survivorship account when she executed the first signature card on August 31, 1979. Concerning the October 9th transaction, Orphans' Court, relying on the testimony of an acquaintance of decedent, Mrs. Dorothea Johnson, concluded that the evidence did not clearly and convincingly indicate that decedent's intentions in executing the second signature card were other than to create a survivorship account.

On appeal, the findings of an Orphans' Court judge who hears testimony without a jury are entitled to the weight of a jury verdict. *In re: Masciantonio's Estate,* 396 Pa. 16, 151 A.2d 99 (1959). This rule is particularly

1. Originally, this action began when Henrietta Thier petitioned Orphans' Court to have any withdrawal from the disputed accounts preliminarily enjoined. By order dated October 15, 1979, the court enjoined Mary L. Boczar from withdrawing any of the funds in the disputed accounts and scheduled a hearing on a citation to Mary L. Boczar to show cause why the funds should not be turned over to the Estate of Bridget Dembiec. Subsequently, all the other intestate heirs of Bridget Dembiec, except Mary L. Boczar, joined the petition of Henrietta Thier and are appellants in this appeal.

applicable "to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony." *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. *In re: Estate of Damario*, 488 Pa. 434, 412 A.2d 842 (1980). However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts. *In re: Ischy Trust*, 490 Pa. 71, 415 A.2d 37 (1980).

We turn now to consider the arguments of appellants and the evidence as to each of the separate transactions when the decedent added appellee's name to her bank accounts.

### August 31st Transaction

In Pennsylvania the ownership of funds held in a joint account is governed by statute. *See* 20 Pa.C.S.A. § 6301 *et seq.* The Decedents, Estates, and Fiduciaries Code provides that:

> **(a) Joint account.**—Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created....

20 Pa.C.S.A. § 6304(a). The Official Advisory Comment to this section states that the effect of this provision is to make a joint account "a survivorship arrangement unless clear and convincing evidence of a different contention is offered." The comment indicates that this section presumes "that most persons who use joint accounts want the survivor ... to have all balances remaining at death."

Consistent with Section 6304(a), appellants argue that the evidence as to the August 31st transaction clearly and convincingly established that decedent did not intend a

survivorship arrangement. Our review of the evidence reveals the following.

The parties stipulated that decedent executed a signature card that expressly stated that it created a joint account with right of survivorship. None of the circumstances attendant to the execution of this form were brought out at trial.

During appellants' case, Miss Joan Dougherty, an employee of the Northeastern Bank of Pennsylvania, testified that near the end of August in 1979 appellee came to the bank seeking to have her name added to decedent's bank account. Miss Dougherty testified that she called the decedent on the phone before giving appellee any forms to add a name to the account. Upon reaching decedent, Miss Dougherty told her that appellee was in the bank to add a name to her account and that the bank did not permit this unless the depositor was present. Miss Dougherty testified that decedent told her that she was ill and was waiting to go to the hospital and "that she wanted to have her sister's name on the account in case she needed money while she was in the hospital..." Further, Miss Dougherty testified that nothing was said that would indicate whether decedent did or did not intend to give the money in the account to her sister. Signed forms creating the joint account were returned to the bank a short time after the day appellee received them.

Appellants contend that Miss Dougherty's testimony was clear and convincing evidence that decedent intended to create a convenience account. Were this the only evidence of decedent's intent, we would be inclined to agree.[2]

However, in addition to the testimony of Miss Dougherty the Orphans' Court considered the deposition testimony of Attorney Johnston. Attorney Johnston testified that he had been called to decedent's hospital room on October 7, 1979 to discuss with decedent matters relating to the preparation of her will. Attorney Johnston stated that during that discussion, decedent "indicated that she had a bank

2. *See In re: Estate of Cilvik,* 439 Pa. 522, 267 A.2d 836 (1970).

account she thought she had already taken care of which was to go to her sister, Mary Boczar." In concluding that appellants had not sustained their burden of proof, Orphans' Court relied upon the statement attributed to decedent in Attorney Johnston's deposition.

■ Based on the language of Section 6304(a), appellants argue that it was error for Orphans' Court to consider this statement because it originated subsequent to the creation of the August 31st account.[3] However, Section 6304(a) does not limit the admissibility of evidence of decedent's intent to evidence that existed prior to or contemporaneous with the creation of the account. It merely requires that the evidence disclose the intentions of the decedent "at the time the account is created." We therefore reject appellants' argument.

■ As to the substance of the statement related by Attorney Johnston, we note first that it was a reference to the August 31st transaction.[4] From decedent's use of the phrase "already taken care of," it can be inferred that decedent knew of the survivorship arrangement and understood that it would operate to transfer sole ownership of the account to appellee. Additionally we note that the statement clearly indicates that decedent desired that appellee have the money in the account. While the statement was made in the context of instructing decedent's attorney as to what she desired in her will, we think it was also probative evidence of decedent's intention when she created the account on August 31st, since decedent's desire as to

3. Appellants make the same argument as to the testimony of Mrs. Dorothea Johnson. However, Orphans' Court did not rely upon her testimony in ruling on the August 31st transaction. We need not consider appellants' argument, since Orphans' Court relied upon her testimony as to the circumstances of the October 9th transaction.

4. We draw this conclusion because of a later portion of Attorney Johnston's deposition, where it appears that decedent said in a reference to this instruction that the account was held in the name of appellee. (Deposition at 6) We note further that the record indicates that decedent apparently had only two accounts and appellee's name was only on the account that was converted on August 31st. We therefore deduce that decedent referred to the August 31st account.

the disposition of the account was expressed only eight days afterward.[5]

Taking into account the testimony of both witnesses, the critical question remaining is whether it has been clearly and convincingly established that decedent intended other than a survivorship arrangement when she created the joint account. While the statements related by Miss Dougherty are consistent with the intent to create a convenience account, they do not conclusively establish decedent's intent. The statement of decedent related by Attorney Johnston tends to indicate that decedent understood the survivorship arrangement and wished appellee to have the monies in the account. In weighing the statements together, we agree with Orphans' Court that appellants have not clearly and convincingly shown that decedent did not intend to create a survivorship arrangement with appellee.

It being clear that the record supports the findings of Orphans' Court, we affirm as to the August 31st transaction.

### October 9th Transaction

Concerning the October 9th transaction, appellants argue that Orphans' Court committed several legal errors.

Orphans' Court relied upon the testimony of Mrs. Dorothea Johnson.[6] Mrs. Johnson became acquainted with the decedent when both women were situated across from each other as patients in the same hospital ward. Mrs. Johnson testified that on October 9th appellee, appellee's daughter,

5. Appellant also argues that this statement was inadmissible as it was part of a nuncupative will. We find this argument unavailing, since we are not concerned here with whether decedent's oral intentions may be given effect as a testimentary transfer. We do not believe that the fact that the statement may not be probated as a will, bars its admissibility as probative evidence of an inter vivos transaction.

6. Conflicting evidence was presented at trial from Renita Fennick. Since Orphans' Court resolved the question of credibility in favor of Mrs. Johnson's testimony, we are bound by its determination. *See Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819 (1976); *Hankin v. Goodman*, 432 Pa. 98, 246 A.2d 658 (1968). We summarize only Mrs. Johnson's testimony.

Mildred Burcha, a magistrate (Francis Flynn) and a young girl, Renita Fennick, were present with decedent. She testified that she was asked to be a witness to the signing of an uncompleted signature card. She related further that the magistrate told the decedent that the signature card was "to sign the money [in the bank] to [her] sister, Mary, who [she] wanted to give the money to," and that decedent responded by shaking her head in the affirmative. Mrs. Johnson then said that the magistrate told decedent that "if she couldn't sign her name that she could put an 'X'," and he steadied decedent's hand while decedent made an "X" on the signature card. Mrs. Johnson was firm in her recollection that decedent made the "X" on the signature card.

Appellants argue on appeal that this evidence was insufficient as a matter of law to establish valid execution of the signature card because (1) the card was blank when executed, (2) decedent executed the card by mark when, according to appellants, she was able to sign her name, and (3) the procedure used when the mark was affixed did not comport with the signature by mark requirements of the Wills Act, 20 Pa.C.S.A. § 2502(2),[7] which appellants would apply by analogy.

Regarding the sufficiency of the execution, we think the proper inquiry is whether decedent actually executed the signature card by mark and did so under circumstances that permit the conclusion that decedent's mark signified her intention to create the survivorship account. Our review of Mrs. Johnson's testimony satisfies us that decedent understood that the legal effect of executing the card was a transference of ownership of the money in the bank to appellee, although she may not have been aware of the particulars of how that transfer was to be effected. We

---

**7.** Section 2502(2) provides:
> **(2) Signature by mark.** If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, That he makes his mark in the presence of two witnesses who sign their names to the will in his presence.

can therefore conclude from her execution of the card that she manifested her assent to the creation of the survivorship account.

Our conclusion that decedent assented to the creation of the survivorship account is unaffected by appellants' legal arguments.

Appellants argue that the execution of an uncompleted signature card by decedent does not evidence her assent to the creation of a survivorship arrangement. However, the effect of executing the card was orally explained to decedent. Decedent's consent to the creation of a survivorship arrangement may be inferred from her execution of the signature card after hearing the explanation of its effect.[8] Moreover, the fact that the signature card was completed subsequent to the affixing of decedent's mark is of no consequence since the card was properly completed so as to accomplish the obvious intention decedent manifested when she executed the signature card. We reject appellants' argument.

Similarly, we must reject appellants two remaining arguments. First, appellants argue that the decedent was able to sign her name; thus, her "inability/refusal to do so" during the October 9th transaction somehow invalidates the transaction. We cannot agree. Decedent was at liberty to adopt anything as her signature, so long as it is clear that she intended it to be her signature. *See Tomilio v. Pisco,* 123 Pa.Super. 423, 187 A. 86 (1936); *Commonwealth v. Wix,* 10 Chester 497 (C.P. Chester County 1962); *see also Transportation Bureau of Traffic Safety v. Ballard,* 17 Pa.Commw. 310, 331 A.2d 578 (1975); and here it is readily apparent from Mrs. Johnson's testimony that decedent knowingly and deliberately chose to employ a mark as her

8. Appellants' reliance upon *In re: Estate of Krutules,* 120 P.L.J. 313 (C.P. Allegheny County 1972) is misplaced. In that case, the court found that the decedent had executed a blank signature card and the evidence established that decedent was unaware that the effect of the card was to create a survivorship account.

signature.[9] The use of the mark does not alone provide cause to believe that decedent did not assent to the creation of the survivorship arrangement. As to appellants' last argument, the request that we apply the signature by mark requirements of Section 2502(2) to the instant case, we think it would be unwise for us to apply such talismanic formalities by analogy when it is reasonably apparent from the evidence that decedent did indeed execute the bank signature card and under circumstances which show assent to the transaction.

The final contention of appellants is that Orphans' Court erred in refusing the rebuttal testimony of appellant, Henrietta Thier. This issue concerns the following offer of proof:

Your Honor, the witness's name is Henrietta Thier, T-h-i-e-r. Mrs. Thier, for the record, Your Honor, is and would be, were the Petitioners to prevail, an intestate heir of Bridget Dembiec. However, the purpose for calling Mrs. Thier to the stand would be to produce evidence to the effect that, I believe in the evening hours of October 7, 1979, Mrs. Thier, along with other members of her family, went to the hospital to see Bridget Dembiec. When they arrived at the hospital, Mrs. Thier had a conversation with Dorothea Johnson who is the last witness produced by the respondent. Mrs. Thier, if allowed to testify, would testify to the following: That during that conversation with Dorothea Johnson, Dorothea Johnson expressed her knowledge as to the intended disposition of Bridget Dembiec's estate. Specifically, Dorothea Johnson stated to Mrs. Thier that she, Mrs. Thier, and the other members of her immediate family should not worry since Bridget Dembiec had provided amply for all of them in her will. The purpose of introducing such testimony

---

**9.** Even if we were to apply by analogy the strict signature by mark requirements of the Wills Act, as appellants advocate, decedent could have chosen to sign her name by mark instead of by signature, although decedent was able to write her name. *See Milleman Will* 415 Pa. 261, 203 A.2d 202 (1964) *affirming per curiam* by adopting the lower court opinion found at 33 Pa. D & C2d 602, 603 (1963); *In re: Rosato's Estate,* 322 Pa. 229, 185 A. 197 (1936).

would be for impeachment purposes only of Dorothea Johnson. As I understand Mrs. Johnson's testimony during the respondent's case, she testified that she had no knowledge of the intended disposition of Bridget Dembiec's estate by Bridget Dembiec in the provisions of her Will and that Bridget Dembiec had intended in other conversations to her to give almost her entire estate to Mary Boczar.

Reproduced Record at 196a–197a. Orphans' Court excluded the testimony pursuant to an objection grounded on the Deadman's Statute.[10] Appellants, on the other hand, argue that Mrs. Thier's testimony was proper under 42 Pa.C.S.A. § 5933(a) [11], an exception to the incompetency mandated by the Deadman's Statute.

■ Section 5933(a) permits a surviving party to be competent to testify to relevant matters occurring before the death of another if the subject matter of the proposed evidence is something that *occurred between* the surviving party and another living and competent witness who has testified against the surviving party at trial. *See Volkwein v. Volkwein*, 146 Pa.Super. 265, 22 A.2d 81 (1941). Our case law has limited the competency bestowed by Section 5933(a) to matters to which the competent witness has testified. *In re: Bowman's Estate*, 301 Pa. 337, 152 A. 38 (1930); *In re: Roth's Estate*, 150 Pa. 261, 24 A. 685 (1892); *Volkwein v. Volkwein, supra.* As to such matters, the

---

**10.** 42 Pa.C.S.A. § 5930.

**11.** Section 5933(a) provides:
(a) General rule. In any civil action or proceeding before any tribunal of this Commonwealth, or conducted by virtue of its order or direction, although a party to the thing or contract in action may be dead . . ., and his right thereto or therein may have passed, either by his own act or by the act of the law, to a party on record who represents his interest in the subject in controversy, nevertheless any surviving or remaining party to such thing or contract . . ., shall be a competent witness to any relevant matter, although it may have occurred before the death of said party . . . if and only if such relevant matter occurred between himself and another person who may be living at the time of the trial and may be competent to testify, and who does so testify upon the trial against such surviving or remaining party . . .

surviving party is competent to testify in rebuttal and contradict the testimony of the competent witness.

The competency of the surviving party is to be determined by the conditions at the time the surviving party is called to testify, *In re: Roth's Estate, supra,* and when the surviving party relies upon a statutory exception to establish his competency to testify, it is incumbent upon him to bring himself clearly within its provisions. *Burke v. Burke,* 240 Pa. 379, 87 A. 960 (1913). To establish competency, the surviving party may elicit appropriate responses from the competent witness on cross-examination. *See Proper v. Campbell,* 15 Pa.Super. 153 (1900).

■ Our examination of the record at the time Mrs. Thier's testimony was offered convinces us that it was not competent. For appellants' offer to have been competent, it must clearly appear that Mrs. Thier's testimony meets the threshold requirement of Section 5933(a) that the proposed evidence related to a conversation that *occurred between* Mrs. Thier (surviving party) and Mrs. Johnson (competent witness). There was no such direct testimony from Mrs. Johnson. While she indicated on cross-examination that she made no statements to the heirs concerning decedent's will, this testimony is insufficient to show that a conversation had occurred between the heirs and Mrs. Johnson, or, assuming *arguendo* that it did, that Mrs. Thier was present. The only other bases upon which appellants may rely to satisfy the threshold requirement of Section 5933(a) are counsel's assertions in stating his offer of proof and Mrs. Thier's testimony itself. Neither is sufficient. Counsel's assertions in his offer of proof are not evidence. Mrs. Thier may not testify prior to appellants having established the conditions for her competency. *See In re Roth's Estate, supra.* Without testimony from Mrs. Johnson, it was incumbent upon appellants to establish the conditions for Mrs. Thier's competency by other competent evidence. Absent proof that Mrs. Thier conversed with Mrs. Johnson, appellants' offer of proof was not competent under Section 5933(a).

Finding that Orphans' Court did not commit any errors of law, we affirm its findings pertaining to the October 9th transaction.

Decree affirmed.

POPOVICH, J., concurs in the result.