480 A.2d 1233

**ESTATE OF Bertram W. KORN, Deceased.**

**Appeal of Rita P. KORN.**

**ESTATE OF Bertram W. KORN, Deceased.**

**Appeal of Samuel S. FELDGOISE, Charles C. Pollack and I. Jerome Stern, Executors of the Will of Bertram W. Korn, Deceased.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1983.

Filed Aug. 10, 1984.

G. David Rosenblum, Philadelphia, for appellant (at No. 852) and for participating party (at No. 990).

Robert J. Stern, Philadelphia and M. Paul Smith, Norristown, for appellants (at No. 990) and for participating parties (at No. 852).

Before SPAETH, President Judge, and CIRILLO and JOHNSON, JJ.

JOHNSON, Judge:

This action involves an appeal and cross-appeal from a Final Decree entered by the Orphans' Court Division of the Court of Common Pleas of Montgomery County on February 28, 1983. That order dismissed exceptions to the adjudication nisi of August 30, 1982. *Korn Estate,* 3 Fiduc. Rep.2d 138 (1983). Rita P. Korn (Appellant at 852 Philadelphia, 1983 and Appellee at 990 Philadelphia, 1983) is the widow of the late Rabbi Bertram W. Korn who died on December 11, 1979. Mrs. Korn, who married Rabbi Korn on February 9, 1971, elected to take against the will as the surviving spouse under 20 Pa.C.S. § 2203. Mrs. Korn complains that she was not awarded her proper one-third elective share by the trial court. The Executors of Rabbi Korn's will (Appellees at 852 Philadelphia, 1983 and Appellants at 990 Philadelphia, 1983) also challenge a portion of the trial court's determination.

Mrs. Korn's claim is premised on 20 Pa.C.S. § 2203 which sets forth in relevant part:

(a) Property subject to election.—When a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of the following property:

(1) Property passing from the decedent by will or intestacy . . . .

(3) Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his own benefit ....

(5) Survivorship rights conveyed to a beneficiary of an annuity contract to the extent it was purchased by the decedent during the marriage and the decedent was receiving annuity payments therefrom at the time of his death.

(6) Property conveyed by the decedent during the marriage and within one year of his death to the extent that the aggregate amount so conveyed to each donee exceeds $3,000, valued at the time of conveyance ....

(b) Property not subject to election.—The provisions of subsection (a) shall not be construed to include any of the following except to the extent that they pass as part of the decedent's estate to his personal representative, heirs, legatees or devisees: ....

(2) The proceeds of insurance, including accidental death benefits, on the life of the decedent.

(3) Interests under any broad-based nondiscriminatory pension, profit sharing, stock bonus, deferred compensation, disability, death benefit or other such plan established by an employer for the benefit of its employees and their beneficiaries ....

(5) Survivorship rights conveyed to a beneficiary of an annuity contract to the extent it was purchased by the decedent during the marriage and the decedent was receiving payments therefrom at the time of his death.

At the time of his death Rabbi Korn's assets included, *inter alia,* an extensive library of approximately 1,500 books relating to American Jewry. Mrs. Korn alleges that the lower court erred in establishing the value of the library at $36,946.25. At the evidentiary hearings held on Mrs. Korn's Objections to the First Account and Petition for Adjudication, expert testimony was presented on behalf of both Mrs. Korn and the Executors. Mrs. Korn's expert,

Clarence Wolf, testified that in his opinion the library was worth $36,946.25 on an individual book basis, but the entire library taken as a whole was worth $45,000 (R. at 112a).

The expert for the Executors, Dr. David Szewczyk, appraised the library at $31,917.50. He opined that it would be very difficult to sell the library as a unit because of the library's mix of scholarly and rare materials (R. at 139a–140a). In other words, Dr. Szewczyk did not believe the library as a whole was worth more than the aggregate value of its individual volumes. The trial court accepted the $36,946.25 value proffered by Mr. Wolf, but agreed with Dr. Szewczyk's position the library taken as a whole did not warrant a premium value.

This court's limited scope of review on appeals from Orphans' Court decisions was recently discussed in *Estate of Dembiec*, 321 Pa.Super. 515, 468 A.2d 1107 (1983).

"On appeal, the findings of an Orphans' Court judge who hears testimony without a jury are entitled to the weight of a jury verdict. *In re: Masciantanio's Estate*, 396 Pa. 16, 151 A.2d 99 (1959). This rule is particularly applicable 'to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.' *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. *In re Estate of Damario*, 488 Pa. 434, 412 A.2d 842 (1980). However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts. *In re: Ischy Trust*, 490 Pa. 71, 415 A.2d 37 (1980)."

321 Pa.Super. at 519–520, 468 A.2d at 1110.

Since the findings of the trial court regarding the valuation of the library are supported by competent and adequate evidence, these findings must be affirmed.

■ In addition to property which passed from the decedent by will, the trial court reviewed claims by Mrs. Korn that she was entitled to a one-third share of other types of property.

Prior to Dr. Korn's death he served as Rabbi for Reform Congregation Keneseth Israel. Dr. Korn was covered under a multi-employer pension plan established with the Rabinnical Pension Fund which called for the Board of Trustees of the Congregation to contribute an amount equal to 15% of Dr. Korn's salary. The pension benefits payable to Dr. Korn's beneficiary under this plan equalled $170,-489.22 plus $71,962.05 in life insurance benefits.

The trial court found that none of the pension benefits were subject to election. Mrs. Korn argues that the pension benefits should not be excluded from her one-third share because they are not covered by 20 Pa.C.S. § 2203(b)(3). Since the Rabbinical Pension Board did not employ Rabbi Korn, Mrs. Korn takes the position that the pension plan was not "established by an employer."

As the trial court properly indicated:

A plan is no less established by an employer when the employer, for convenience or economy, makes contributions to an existing multi-employer fund rather than creates a separate fund under its own management. Furthermore, no purpose under the Code would be served by requiring each employer to create its own plan rather than permitting them the option of contributing to a multi-employer fund, thereby obtaining the benefit of shared administrative costs.

*Korn Estate,* 3 Fiduc.Rep.2d at 143. The legislature could not have intended to draw a distinction between large employers, that create and administer their own pension plans, and smaller employers that elect the option of contributing to a multi-employer pension plan such as the plan administered by the Rabbinical Pension Fund. We agree with the trial court that Rabbi Korn's pension benefits are excluded from election under Section 2203(b)(3). Therefore,

we need not address the question of whether these benefits come under Section 2203(a).

■ Mrs. Korn also complains that proceeds from two insurance policies should have been included in the calculation of her elective share, because the decedent was receiving annuity payments from these policies prior to his death.

In the 1930's, before his marriage to Rita Korn, Rabbi Korn purchased two life insurance policies from Travelers Insurance Company. These policies gave the insured the option of selecting an optional retirement income prior to the maturity date when the policies would become paid-up. In 1973 after paying premiums on these policies for over thirty-four years, Rabbi Korn elected to receive the optional retirement income. Mrs. Korn argues that because of the decedent's optional retirement income election, the beneficiaries under these policies received an annuity subject to her elective share rather than proceeds of insurance.

20 Pa.C.S. § 2203(a)(5) only gives the surviving spouse the right to an elective share of the proceeds from an annuity contract if the contract was purchased "during the marriage." In the instant case the insurance policies in question were purchased well before Rita Korn married the decedent. Mrs. Korn concedes that the insurance contracts were originally purchased prior to the marriage, but argues that the policies were partially purchased during the marriage because some annual premium payments were made during that period. We believe the trial court properly concluded that the policies were purchased prior to the marriage. As this court stated in *Harris v. St. Christopher's Hosp. for Children*, 291 Pa.Super. 451, 436 A.2d 203 (1981):

> "The insured *purchases* the individual policy, and thereafter pays the applicable premium amounts".

*Id.* 291 Pa.Super. at 456, 436 A.2d at 205 (emphasis in original). We express no opinion on whether the optional retirement income received by the decedent represents annuity payments.

Finally, with regard to the property conveyed by Rabbi Korn to Valerie Khaner in the year preceding Rabbi Korn's death, Mrs. Korn asserts that she has a right to an elective share of such property, by virtue of 20 Pa.C.S. § 2203(a)(6).

During this period six personal checks totalling $5,700 were written by Rabbi Korn and cashed by "V. Khaner". In addition Mrs. Khaner received airline tickets from Rabbi Korn valued at $1,594.34. According to the testimony of the decedent's son, Bertram Korn, Jr., Rabbi Korn planned to marry Valerie Khaner. There is no indication on the record, however, that any of the six personal checks or airline tickets conveyed to Ms. Khaner were given with donative intent.

 A valid inter vivos gift requires both donative intent and delivery. *Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819 (1976). Donative intent can be inferred from the relationship between the donor and donee, however. Our supreme court in *Brightbill v. Boeshore*, 385 Pa. 69, 76, 122 A.2d 38, 42 (1956) stated "[a]s between parties so related [i.e. father to daughter], if it appears that there was a voluntary delivery without explanatory words and a retention by the transferee, it can be assumed that there was an intention to give."

In its Adjudication filed August 30, 1982, the Orphans' Court expressly ruled:

We find the record to be totally devoid of any evidence of the existence of a gift. The critical element of donative intent has not been established. *Korn Estate*, 3 Fiduc. Rep.2d at 145

 Findings of an auditing judge ordinarily are entitled to great weight and should be rejected only in a clear case and only for good and sufficient reason. *In re Estate of Vajentic*, 453 Pa 1, 306 A.2d 300 (1973). The instant case presents no basis for disturbing the findings and conclusions of the trial court.

 In the instant case delivery of the personal checks and airline tickets to Ms. Khaner has been established.

Since there is no express indication of donative intent, we must look to the relationship between Rabbi Korn and Ms. Khaner to see if the element of donative intent can be inferred. It appears that Rabbi Korn and Ms. Khaner were close personal friends who eventually intended to marry. At the time of Rabbi Korn's death, however, there was no familial relationship between the two. In fact, Rabbi Korn was still married to Mrs. Rita Korn.

Mrs. Korn, in this case, has the burden of proving a gift by clear, precise, direct and convincing evidence. *In re Estate of Clark*, 467, Pa. 628, 359 A.2d 777 (1976). That burden has not been met, and we will not infer donative intent, based on a non-familial, close personal friendship. A closer relationship must exist for donative intent to be inferred. *See Brightbill v. Boeshore, supra; In re Yeager's Estate*, 273 Pa. 359, 117 A. 67 (1922) (father to daughter); *Northern Trust Co. v. Huber*, 274 Pa. 329, 118 A. 717 (1922) (father to son and daughter-in-law); *In re Chapple's Estate*, 332 Pa. 168, 2 A.2d 719 (1938) (father to son).

We disagree with the suggestion in President Judge Spaeth's concurring and dissenting opinion that the decedent's personal relationship with Ms. Khaner established a gift of the personal checks and airline tickets. If, as President Judge Spaeth indicates, some evidence may be necessary to establish donative intent for gifts between family members, then, *a fortiori*, even more evidence will be necessary where the donor and donee are not related. The trial court properly rejected Mrs. Korn's claim that the personal checks and airline tickets were gifts since there was absolutely no evidence of the existence of a gift and the critical element of donative intent had not been established.[1]

On the cross-appeal, the Executors of the estate of Rabbi Korn challenge the trial court's finding that proceeds

---

1. Because we find no gift here, we express no opinion on whether the entire value of the personal checks and airline tickets ($7,294.34) would have been subject to a $3,000 reduction prior to inclusion in the property subject to election under 20 Pa.C.S. § 2203(a)(6).

of the decedent's deferred compensation plan were subject to Mrs. Korn's election. The Board of Trustees of Reform Congregation Keneseth Israel had established a deferred compensation plan for Dr. Korn which gave him a right to change beneficiaries at any time prior to death. When Dr. Korn died the balance of the plan payable to his beneficiaries was $48,382.45 (R. at 38a).

The Executors argue persuasively that the proceeds of the plan are not subject to Mrs. Korn's election under 20 Pa.C.S. § 2203(a)(3) because the designation of beneficiaries by Rabbi Korn was not a "conveyance" as that term is defined in Section 2201. That Section states:

As used in this chapter, unless the context clearly indicates otherwise, "conveyance" means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation.

There must be either an inter vivos or testamentary operation in the creation of the property interest for there to be a conveyance. Since the designation of the beneficiaries by Rabbi Korn was revocable at any time prior to death, his designation did not create an inter vivos or testamentary interest. *Equitable Life Assurance Soc. v. Stitzel*, 299 Pa.Super. 199, 445 A.2d 523 (1982).

The February 28, 1983 Order of the trial court is affirmed in part and reversed in part. This matter is remanded to the trial court for proceedings consistent with this opinion. Jurisdiction is relinquished.

SPAETH, President Judge, filed a concurring and dissenting opinion.

SPAETH, President Judge, concurring and dissenting:

I believe that the face amount of the checks and the value of the airline tickets that decedent gave Ms. Valerie Khaner should be included in appellant's elective share under 20 Pa.C.S. § 2203. Otherwise I join in the majority's disposi-

tion, although on the issue of decedent's deferred compensation plan, my reasoning is a bit different.

–1–

The majority states that "[t]here is no indication on the record ... that any of the six personal checks or airline tickets conveyed to Ms. Khaner were given with donative intent." At 162. One must ask, "Why else did he give them to her?" Decedent's son testified, without contradiction, that his father intended to marry Ms. Khaner, N.T. 101, and that Ms. Khaner provided no professional services to his father, N.T. 102. (The only other witness on the point was I. Jerome Stern, a co-executor of decedent's estate, who said he had no opinion whether the checks and airline tickets were gifts. N.T. 141).

The majority says that it "will not [*i.e.*, may not] infer donative intent, based on a non-familial, close personal friendship," at 163, but the cases the majority cites do not so hold. Instead the cases all involve gifts between family members and hold only that when "a claimant is a close relative, ... less evidence to prove the gift is required than to prove a gift to a stranger." *Balfour v. Seitz*, 392 Pa. 300, 304 n. 4, 140 A.2d 441, 443 n. 4 (1958). *See also Estate of Chiara*, 467 Pa. 586, 592 n. 5, 359 A.2d 756, 759–60 n. 5 (1976); *Brighthill v. Boeshore*, 385 Pa. 69, 76, 122 A.2d 38, 42 (1956); *Chapple's Estate*, 332 Pa. 168, 170, 2 A.2d 719, 720 (1938); *Yeager's Estate*, 273 Pa. 359, 362, 117 A. 67, 68 (1922). Since here the (asserted) gifts were *not* "between family members", these cases are not helpful. In other words: Knowing that *less* evidence is required to prove a gift when the transfer is between family members does not help decide whether here there was *enough* evidence to prove a gift.

One who claims a gift has the burden of proving intent and delivery by evidence that is clear, precise, and convincing. *Pappas Estate*, 428 Pa. 540, 542, 239 A.2d 298, 300 (1968). When a prima facie case that a gift was made is established, the burden shifts to the opponent of the gift, and to sustain that burden the opponent must likewise

produce clear, precise, and convincing evidence. *Fenstermaker Estate*, 413 Pa. 645, 648, 198 A.2d 857, 859 (1964); *Rogan Estate*, 404 Pa. 205, 211, 171 A.2d 177, 179 (1961). For my part, I am satisfied that the evidence of decedent's relationship with Ms. Khaner established a prima facie case, which was unrebutted by any evidence, much less by clear, precise, and convincing evidence.

–2–

Appellant argues that the amounts paid on decedent's behalf into a deferred compensation plan should also be included in her elective share under 20 Pa.C.S. § 2203(a)(3). That section provides:

> (3) Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his own benefit. 20 Pa.C.S. § 2203(a)(3).

Appellant claims that decedent's designation of beneficiaries under the plan was a "conveyance." "Conveyance" means "an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation." 20 Pa.C.S. § 2201. Here, decedent's designation of beneficiaries could have no "inter vivos ... operation"; it could only give rise to an expectancy. Nor could the designation have any "testamentary operation," for 20 Pa.C.S. § 6108(a) provides in part that:

> [t]he designation of beneficiaries of life insurance, annuity or endowment contracts, or of any agreement entered into by an insurance company in connection therewith, supplemental thereto or in settlement thereof, and the designation of beneficiaries of benefits payable upon or after the death of a participant under any pension, bonus, profit-sharing, retirement annuity, or other employee-benefit plan, shall not be considered testamentary and shall not be subject to any law governing the transfer of property by will.

I should therefore reverse the order of the trial court insofar as the checks and airline tickets, as well as the deferred compensation plan, are concerned, while otherwise affirming.