664 A.2d 142

## In re ESTATE OF Gerald J. INTER.

### Appeal of Thomas W. INTER and Richard J. Inter, Co-Executors of the Estate of Jean M. Inter, Appellants.

Superior Court of Pennsylvania.

Argued April 25, 1995.

Filed Aug. 25, 1995.

418

Bernard J. Hessley, Warren, for appellants.

H. Robert Hampson, Warren, for Maxine Inter, participating party.

Before DEL SOLE, KELLY and BROSKY, JJ.

KELLY, Judge.

In this appeal, we are called upon to determine whether the Orphans' Court of Warren County properly permitted the decedent's widow, appellee, Maxine Inter, the right to elect to take against two bank accounts which decedent created before his marriage to appellee where the banks accounts were to be held in trust for the decedent's mother, Jean Inter.[1] Pursuant to 20 Pa.C.S.A. § 2203(a)(3), a surviving spouse has the right to an elective share of one-third of any property conveyed by decedent during his lifetime that the decedent had a power, at the time of his death, to either revoke the conveyance or to consume, invade, or dispose of the principal for his own benefit. Thus, we affirm.

The relevant facts and procedural history are as follows. Gerald J. Inter died on January 23, 1988, testate, leaving his farm to his wife and the residue of his estate to his mother,

1. Appellants are the co-executors of their mother's estate, Jean M. Inter, Deceased.

Jean M. Inter. The estate consisted of the farm which was bequeathed to the executrix, two other properties, various shares of stock, farm equipment, a pickup truck, a premium and accrued interest refunded from a life insurance policy issued by Monarch Insurance, and various other funds and income. The decedent also owned several bank accounts, both checking and savings. The disposition of two of these accounts are at issue in this appeal. These two bank accounts were opened in 1983 by decedent at the Seaman's Bank before his marriage to appellee, Maxine Inter, and were established to be held in trust for Jean Inter. The record reflects that decedent maintained control over the accounts and withdrew and added funds to the checking account but never added or withdrew any funds from the savings account after making the initial deposit in 1983. The record further reflects that appellant and appellee agree that the Seaman's Bank accounts were tentative trusts rather than joint accounts.

A petition to probate the will was filed and on February 3, 1988, appellee, the widow of the deceased, was appointed executrix. Letters testamentary were duly issued and on February 24, 1988, appellee filed a notice of intention to take against the will. On December 4, 1992, appellee filed a First and Final Account and subsequently, the Honorable Robert L. Wolfe, Senior Judge, appointed Maureen A. Flynn to serve as the court hearing officer to consider appellants' objections to the First and Final account. The hearing officer conducted two record hearings, one on June 16, 1993 and another on July 26, 1993. On February 9, 1994, the hearing officer filed her report and recommendations to which appellants filed twelve exceptions on February 28, 1994. Subsequently, the exceptions were argued before the Honorable Robert L. Wolfe, Senior Judge, who issued an adjudication and decree nisi on May 19, 1994. On June 7, 1994, appellants filed exceptions to the adjudication and decree nisi.[2] Following argument on September 6, 1994, Judge Wolfe issued an order absolutely

2. As Judge Wolfe properly noted, the exceptions filed on February 28, 1994 and those filed on June 7, 1994 were substantially the same, and therefore, the court did not repeat its adjudication of May 19, 1994.

dismissing the majority of the exceptions.[3] This timely appeal followed.

On appeal, appellants raise five issues for our review:

1. ARE FUNDS HELD IN TWO JOINT ACCOUNTS IN THE NAME OF DECEDENT AND HIS MOTHER BOTH ESTABLISHED BEFORE DECEDENT'S MARRIAGE SUBJECT TO THE WIDOW'S ELECTION?

2. ARE THE EXECUTRIX/WIDOW AND HER ATTORNEY ENTITLED TO A FEE BASED SOLELY ON A PERCENTAGE OF THE ESTATE ASSETS?

3. IS THE EXECUTRIX/WIDOW ENTITLED TO CLAIM AS AN ASSET OF THE ESTATE SUBJECT TO HER WIDOW'S ELECTION THE REFUND OF A LIFE INSURANCE PREMIUM PLUS THE INTEREST ON A POLICY DISHONORED BY THE INSURER BECAUSE OF DECEDENT'S MISREPRESENTATION ON THE APPLICATION WHERE THE BENEFICIARY WAS THE DECEDENT'S MOTHER AND THE POLICY WAS ISSUED BEFORE DECEDENT'S MARRIAGE?

4. IS THE EXECUTRIX/WIDOW SUBJECT TO A SURCHARGE FOR HER FAILURE TO ACCOUNT TO THE ESTATE FOR ASSETS HAVING VALUE INCLUDING TWO MOTOR VEHICLES, FARM ANIMALS AND TIMBER?

5. IS THE ESTATE CHARGEABLE FOR EXPENSES FOR FEED BILLS, AUTOMOBILE INSURANCE, MORTGAGE PAYMENTS, CREDIT CARD ANNUAL FEES AND UTILITY BILLS INCURRED FOR MAINTAINING THE EXECUTRIX/WIDOW IN DECEDENT'S FARM HOME OCCUPIED BY THE EXECUTRIX/WIDOW WHO CLAIMED THE FARM AS

**3.** Judge Wolfe granted in part appellants' seventh exception. The court ordered the executrix to include the $1,500.00 she received for the "downed timber" as an asset of the estate.

PART OF HER ELECTIVE SHARE OF THE ES-
TATE?

Appellants' Brief at 2.

As an appellate court, we review the findings and conclu-
sions of the orphans' court as follows.

> The findings of a judge of the orphans' court division, sitting
> without a jury, must be accorded the same weight and effect
> as the verdict of a jury, and will not be reversed by an
> appellate court in the absence of an abuse of discretion or a
> lack of evidentiary support. *In re Estate of Cornell,* 336
> Pa.Super. 594, [597], 486 A.2d 424, 425 (1984).
>
>> This rule is particularly applicable "to findings of fact
>> which are predicated upon the credibility of the witnesses,
>> whom the judge has had the opportunity to hear and
>> observe, and upon the weight given to their testimony."
>> *Herwood v. Herwood,* 461 Pa. 322, 336 A.2d 306 (1975).
>> In reviewing the Orphans' Court's findings, our task is to
>> ensure that the record is free from legal error and to
>> determine if the Orphans' Court's findings are supported
>> by competent and adequate evidence and are not predi-
>> cated upon capricious disbelief of competent and credible
>> evidence. *In re: Estate of Damario,* 488 Pa. 434, 412
>> A.2d 842 (1980). However, we are not limited when we
>> review the legal conclusions that Orphans' Court has
>> derived from those facts. *In re: Ischy Trust,* 490 Pa. 71,
>> 415 A.2d 37 (1980).
>
> *In re Estate of Dembiec,* 321 Pa.Super. 515, 519–520, 468
> A.2d 1107, 1110 (1983).

*Estate of Gilbert,* 342 Pa.Super. 82, 87–88, 492 A.2d 401, 404
(1985).

■ After reviewing the record, the briefs of the parties,
the applicable law, and the opinion of the orphans' court, it is
our determination that the appellants' issues two through five
are without merit. The May 19, 1994 adjudication opinion
authored by the Honorable Robert L. Wolfe, Senior Judge,
comprehensively discusses and properly disposes of the appel-

lants' issues two through five.[4] Therefore, we affirm on the basis of the May 19, 1994 opinion as to these issues.

█ In the first issue on appeal, appellants assert that the orphans' court erred in holding that the checking and savings accounts established at Seaman's Bank were subject to the widow's election. Appellants do not dispute that the Seaman's bank accounts were trust accounts rather than joint accounts. Appellants predicate their argument on the fact that decedent created and conveyed the tentative trust accounts prior to decedent's marriage to appellee. Accordingly, because decedent never revoked the tentative trusts, 20 Pa.C.S.A. § 2203(a) precludes appellee from electing against the tentative trust accounts. After a careful review of the record, in light of Pennsylvania law, we disagree. Therefore, we affirm the ruling of the orphans' court as to appellants' first issue on appeal.

█ A tentative trust is created when,

a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.

Restatement of the Law (Second) of Trusts § 58 (1974). The theory of tentative trusts was "enunciated in an effort to

4. Appellants' second issue is addressed on pages eleven through fourteen of the trial court's opinion; the third issue is disposed of on pages two through four; the fourth issue is addressed on page fifteen; and appellants' final issue is discussed on pages ten and eleven.

Moreover, regarding issue three, the returned premium and accrued interest on the Monarch life insurance policy, it is well-settled law in Pennsylvania that where premiums are returned, the right of recovery is vested in the person who paid them (the insured) or his assigns, and not in the designated beneficiary of the policy. See Fidelity–Philadelphia Trust Co. v. Bankers Life Ins. Co. of Nebraska, 370 Pa. 513, 88 A.2d 710 (1952); Infantino v. Quaker City Fire and Marine Ins. Co., 159 Pa.Super. 454, 48 A.2d 77 (1946).

retain for the depositor complete control of the fund during his life and yet secure to the beneficiary any balance ... at the death of the depositor." *Scanlon's Estate*, 313 Pa. 424, 427, 169 A. 106, 108 (1933). A tentative trust is revocable by the (depositor) prior to his death by "any clear manifestation of an intention to do so." *In re Estate of Stevenson*, 436 Pa.Super. 576, 581, 648 A.2d 559, 561 (1994) (quoting *Estate of Vittorio*, 290 Pa.Super. 329, 331, 434 A.2d 777, 779 (1981)). Tentative trusts do not constitute part of a decedent's estate; rather, the funds pass directly to the named beneficiary. *In re Estate of McFetridge*, 472 Pa. 546, 372 A.2d 823 (1977).

A tentative trust often had the effect of precluding a surviving spouse's right to inherit the deceased spouse's estate. The depositor of the tentative trust retained control of the assets during his lifetime and subsequently was able to leave the money to a third party. *In re Schwartz' Estate*, 449 Pa. 112, 295 A.2d 600 (1972). The obvious philosophy of Section 11 of the Estate Acts of 1947 is to prevent a husband from indirectly disinheriting his wife through an *inter vivos* transfer while retaining control over the use and enjoyment of the property during his lifetime. *Montague Estate*, 403 Pa. 558, 170 A.2d 103 (1961). Accordingly, 20 P.S. § 301.11 and its successor 20 Pa.C.S.A. § 6111 were enacted to ensure that the surviving spouse would not be disinherited through a tentative trust. Section 6111 reads as follows:

(a) **In general.**—*A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor.* The provisions of this subsection shall not apply to any contract of life insurance purchased by a decedent, whether payable in trust or otherwise, nor to employee death benefits described in section 6108 of this

code (relating to designation of beneficiaries of insurance or employee death benefits not testamentary), whether payable in trust or otherwise.

**(b) Determination of share.**—The spouse may elect to take against any such conveyance and shall be entitled to one-third thereof if the conveyor is survived by more than one child, or by one or more children and the issue of a deceased child or children, or by the issue of more than one deceased child, and in all other circumstances one-half thereof.

**(c) Election against other conveyances.**—A spouse electing under this section also must elect to take against the will, if he is a beneficiary thereunder, and against all other conveyances within the scope of subsection (a) of this section of which he is a beneficiary.

**(d) Procedure.**—The election to treat a conveyance as testamentary shall be made in the same manner as an election to take against the will. If there is a will, such election shall be made within the same time limitations as an election to take against the will. If there is no will, such election shall be made within one year of the conveyor's death, and the orphans' court division, on application of the surviving spouse made within such period, may extend the time for making the election. It can be made only if there has been no forfeiture of the right to make an election. The court having jurisdiction of the deceased conveyor's estate shall determine the rights of the surviving spouse in the property included in the conveyance.

20 Pa.C.S.A. § 6111 (emphasis added).

Because 20 P.S. § 301.11 and its recodification as 20 Pa. C.S.A. § 6111 were enacted to prevent a spouse from defrauding the surviving spouse of his or her marital rights and to confirm a long existing public policy of Pennsylvania to protect a surviving spouse's rights, *see Montague Estate, supra,* at 558, 170 A.2d 103; *In re Behan's Estate,* 399 Pa. 314, 160 A.2d 209 (1960); *In re Pengelly's Estate,* 374 Pa. 358, 97 A.2d 844 (1953), a surviving spouse had the right to elect against a

tentative trust. *In re Kuestner's Estate,* 72 Pa. D. & C.2d 372 (1976).

In 1978, however, 20 Pa.C.S.A. § 6111 was repealed and 20 Pa.C.S.A. § 2203 was enacted. Chapter 22 pertains to the elective rights of a surviving spouse and reads in pertinent part as follows:

(a) **Property subject to election.**—When a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of the following property:

(3) *Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his own benefit.*

20 Pa.C.S.A. § 2203 (emphasis added).

The official comment to Chapter 22 suggests that the Pennsylvania legislature attempted to consolidate the spousal election provisions which were dispersed throughout the Estates Code. The official comment further indicates that the changes implemented by Chapter 22 were primarily intended to broaden the property subject to a surviving spouse's election. Therefore, although the legislature repealed 20 Pa. C.S.A. § 6111, the law pertaining to tentative trusts and spousal election was not altered in any significant way because 20 Pa.C.S.A. § 6111 was recodified within Chapter 22 as indicated by 20 Pa.C.S.A. § 2203(a)(3). This is supported by the official comment to 20 Pa.C.S.A. § 2203 which states that (a)(3) of § 2203 pertains to revocable transfers and was intended to conform with current Pennsylvania law. Thus, to conclude that a surviving spouse could not elect against a tentative trust would contradict the legislature's intent.

Despite the fact that 20 Pa.C.S.A. § 2203 was enacted in 1978, in 1984 this Court in the case of the *Estate of Korn, infra,* stated that the proceeds of a deferred compensation plan were not subject to the surviving spouse's election. *Estate of Korn,* 332 Pa.Super. 154, 164, 480 A.2d 1233, 1238 (1984). In reaching this decision, the Court stated that because the decedent had the power to revoke the designation of the beneficiaries to the compensation plan proceeds at any time prior to death, the designation was not a conveyance as

defined by 20 Pa.C.S.A. § 2201.[5] *Id.* at 164, 480 A.2d at 1238. The Court concluded that the decedent's designation of beneficiaries was not a conveyance because it did not create an *inter vivos* or testamentary interest. *Estate of Korn, supra* at 164, 480 A.2d at 1238. This ruling, however, does not pertain to tentative trusts because the power involved in establishing a trust creates a future interest whereas decedent in *Estate of Korn, supra,* had only the power to designate a beneficiary. *See id.*

Moreover, the case at bar is distinguishable from *Estate of Korn, supra,* because decedent had the power to revoke Jean Inter's interest in the two accounts whereas decedent in *Korn* had only the power to revoke a designation of beneficiaries rather than an actual interest. Accordingly, we hold that *Estate of Korn, supra* is not controlling in the area of tentative trusts.

Instantly, there is no question that decedent created a tentative trust. The decedent deposited his own funds in two accounts, a savings account and a checking account, to be held in trust for Jean Inter. The record reflects that these two accounts were not joint accounts but were trust accounts. *See* N.T. 7/26/93 at 32. The trust accounts were never revoked because the decedent did not manifest a clear intention to revoke. The passbooks to the trust accounts were in decedent's home and therefore, remained in his possession until the time of death.

Pursuant to 20 Pa.C.S.A. § 2203(a)(3), appellee may elect against the tentative trust established by decedent. Decedent's two accounts were property which was conveyed by the decedent during his lifetime. Decedent conveyed the two accounts to Jean Inter when he created a testamentary interest in the accounts for her. However, this conveyance was revocable by decedent as evidenced by the fact that both accounts were maintained by decedent and he had the power to dispose of the funds if he chose to do so. Furthermore,

5. Pursuant to 20 Pa.C.S.A. § 2201, a conveyance is "an act by which it is intended to create an interest in real or personal property whether the act is intended to have *inter vivos* or testamentary operation." 20 Pa.C.S.A. § 2201.

decedent had the ability to consume the principal of the two accounts which he did when he withdrew funds from the checking account. Hence, appellants' assertion that appellee may not elect against the two accounts established by decedent is without merit.

In concluding that appellee has the right to elect against the two Seaman's Bank accounts, we do not intend to suggest that the elective rights of a surviving spouse entirely supercede a beneficiary's right to the balance of the trust. As this Court noted in a recent decision, "a tentative trust account may substitute for a will in effecting the transfer of property." *In re Estate of Stevenson, supra* at 583, 648 A.2d at 562. Therefore, while appellee is entitled to her elective share of one-third of the balance remaining in the two Seaman's Bank accounts, numbers 1–50001006 and 1C171009, Jean Inter's estate is entitled to the two-thirds of each account.

Based on the foregoing, we conclude that the trial court properly held that appellee could elect against the two Seaman's Bank accounts which were established by decedent in trust for Jean Inter. Additionally, the trial court properly disposed of the other issues raised by appellants in its opinion. Accordingly, the order of the Orphans' Court is affirmed.

Order affirmed.