In re Estate of Henry K. SAGEL, Deceased, Anita Giarrusso, Executrix, Kathleen Arnold, Guardian of Estate.

**Appeal of Estate of Henry K. Sagel.**

Superior Court of Pennsylvania.

Submitted Jan. 9, 2006.

Filed June 6, 2006.

Andrew F. Kagen, York, for appellant.

Robert L. Buzzendore, York, for appellee.

BEFORE: FORD ELLIOTT, P.J., LALLY–GREEN, and GANTMAN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Estate of Henry K. Sagel, appeals *nunc pro tunc* from the trial court's December 7, 2004 order. We affirm.

¶ 2 The trial court found the following facts:

Currently at issue is whether Gregory K. Sagel, the son of Henry K. Sagel (hereinafter referred to as "the Decedent"), as a beneficiary of a specific bequest of "tangible personal property" is entitled to the insurance proceeds of tangible personal property damaged or destroyed at the time of Decedent's death. Specifically, this Court has been asked to address whether or not the Piper Aerostar 600, the aircraft that the Decedent had owned and that which had been destroyed in the accident that caused the Decedent's death, and the Rolex watch that the Decedent was wearing in said accident, were tangible personal property, such that the insurance proceeds of which should go through the Decedent's specific bequest in his will to his son. This Court was asked to decide whether or not the specific bequests of those two items had adeemed. This Court hereby concludes that the plane and watch were tangible personal property that were specifically bequeathed to the Decedent's son, Gregory K. Sagel, and that they did not adeem because the Decedent still owned [them], and the items were still in existence, at the time of the Decedent's

death. Thus, this Court holds that the insurance proceeds of the tangible personal property should go through the specific bequest to the Decedent's son, Gregory K. Sagel.

Decedent, Doctor Henry K. Sagel, died testate on September 20, 1998, as a result of injuries he had sustained in an aircraft crash that occurred in Myrtle Beach, South Carolina. Decedent had owned the plane involved in the crash, and was the sole pilot of the plane at the time of the crash. There were three other passengers in the plane, all of whom also died as a result of said crash. A pedestrian had been struck by the plane, as it crashed, and died as a result of the injuries he sustained.

Representatives of the estates of the four other individuals killed in the crash asserted claims against the Estate of the Decedent, and on August 26, 2003, this Court approved of the Settlement Agreement for those claims and two medical malpractice claims that had been filed against the Estate of the Decedent. Despite the extraordinary claims that could have foreseeably eliminated all Estate assets, the Estate was successful in its efforts to resolve those claims with some Estate assets available for distribution to the designees of the Estate.

*     *     *

The Decedent's Last Will and Testament, Article 1.3, reads, "I give all tangible personal property that I own at my death, including but not limited to, all household furniture and furnishings, automobiles, books, pictures, jewelry, art objects, hobby equipment and collections, wearing apparel and other articles of household or personal use or orna-

ment, to my son, GREGORY SAGEL...." While the parties agreed that the aircraft and the watch, both of which had been destroyed in the crash, were part of this specific bequest, they were in disagreement whether those specific bequests had adeemed. If ademption had not occurred, the son of the Decedent would be entitled to the insurance proceeds from the specific bequests. Otherwise, if ademption had occurred, those specific bequests would extinguish, and the insurance proceeds would pass through the residuary of the Estate.

Trial Court Opinion, 11/19/03, at 1–2, 4.

¶ 3 The trial court found that the watch and the airplane existed at the time of the decedent's death. The trial court concluded, therefore, that the property did not adeem and that the decedent's son was entitled to the insurance proceeds from the watch and airplane. The trial court entered an order to that effect on December 7, 2004. This timely appeal followed.[1]

¶ 4 Appellant raises the following issues for our review:

A. Did the lower court err in determining that the Doctrine of Ademption did not apply to this specific bequest of personal property and the resulting insurance proceeds from the aircraft that the Decedent was piloting, which was destroyed in the crash, resulting in his death, as well as the destruction of his wristwatch, when the insurance proceeds should have been treated as funds available for distribution pursuant to the residuary clause of the Decedent's will?

B. Did the lower court err in its adjudication of the Second Amended Final Account directing that there were no

---

1. In a related case at 1236 MDA 2005, we concluded that the trial court properly permitted this *nunc pro tunc* appeal.

residuary payments to the residuary beneficiaries under the will of the Decedent, but rather that any remaining funds should be paid to Joseph A. Hardy, a minor, per the terms of a Settlement Agreement between Hardy and the Estate?

Appellant's Brief at 4.[2]

¶ 5 We conduct our review according to the following standard:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

*In re Estate of Inter,* 444 Pa.Super. 417, 664 A.2d 142, 144–145 (1995) (internal citations and quotation marks omitted).

¶ 6 Appellant first argues that the doctrine of ademption extinguished decedent's bequest to his son of his airplane and watch, as those items did not exist at the time of decedent's death. The trial court found that the watch and airplane existed at the time of decedent's death. Therefore, the trial court found that ademption did not apply.

¶ 7 Our courts have described the doctrine of ademption as follows:

It has long since been decided in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the time of his death. Testator's intent is not relevant where the property devised or bequeathed in his will is not part of his estate at death. Where the legacy has been determined to be specific the legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator. This rule is equally applicable where the specifically devised or bequeathed property is removed from testator during his lifetime by an involuntary act or by operation of law. Thus, where it is established that the bequest or devise was specific and the [item was nonexistent] in the testator's estate at the time of death, an ademption results.

*In re Estate of Balter,* 703 A.2d 1038, 1041 (Pa.Super.1997), *quoting In re Estate of Fox,* 494 Pa. 584, 431 A.2d 1008, 1010 (1981) (internal citations and quotation marks omitted). This language espouses the "identity" theory of ademption. That theory is that, if the testator does not have the item at the time of his death, or if the item no longer exists, it is adeemed.

2. Appellant included these issues in a timely concise statement of matters complained of on appeal. Pa.R.A.P.1925(b).

There is no inquiry into the testator's intent.

¶ 8 In addition to *Balter*, we must consider 20 Pa.C.S.A. § 2514, which governs interpretation of wills:

(18) **Nonademption; balance.**—A devisee or legatee of property specifically devised or bequeathed has the right to any of that property which the testator still owned at his death and:

(iii) any proceeds unpaid at the testator's death on fire or casualty insurance on the property....

20 Pa.C.S.A. § 2514(18)(iii).[3]

¶ 9 The parties do not dispute that the decedent made a specific bequest of his personal property, including the airplane and watch, to his son. The decedent's will did not contain an anti-ademption clause. The sole issue before us is whether, for purposes of § 2514(18) and the ademption doctrine, the decedent owned the airplane and watch at the time of his death. Our research uncovered no binding precedent governing the instant facts.

¶ 10 Appellant argues that the decedent owned the airplane and watch immediately before his death, but at the time of his death those two items no longer existed.[4] The record does not support Appellant's contention. It is clear that the airplane and watch still existed, albeit in a severely damaged state. Moreover, the plain language of § 2514(18) makes such a determination unnecessary, inasmuch as the relevant inquiry is whether the decedent owned the property at the time of his death. We find no authority for the proposition that accidental damage or destruction of property contemporaneous with decedent's death divests the decedent of ownership in that property, nor does Appellant attempt to argue that such is the case. We therefore conclude, pursuant to § 2514(18), that the decedent's son is entitled to the insurance proceeds from the decedent's airplane and watch.

¶ 11 Appellant's second argument addresses payment from the Estate pursuant to a settlement agreement. Appellant cites no law in support of this argument. Failure to cite pertinent authority in support of an argument results in waiver. Pa.R.A.P. 2119(b); *Harris v. Toys "R" Us–Penn, Inc.*, 880 A.2d 1270, 1279 (Pa.Super.2005). We conclude that Appellant has waived its second argument.

¶ 12 In summary, we have concluded that Appellant's first argument lacks merit and that the second is waived. Accordingly, we affirm the trial court's order.

¶ 13 Order affirmed.

---

3. Appellee Kathleen E. Arnold, Guardian of the Estate, argues at length in her brief that § 2514, which is derived from the Uniform Probate Code, represents the legislature's disapproval of the identity theory of ademption. *See* 20 Pa.C.S.A. § 2514, Jt. St. Comm. Comment –1976. Appellant argues that § 2514 espouses the "intent" theory of ademption, pursuant to which an inquiry into the testator's intent becomes necessary. In light of our analysis in the main text, we need not resolve this issue.

4. Appellant's argument regarding the "existence" of the property is based on *Balter*. Appellant essentially argues that, since the property in question was damaged or destroyed simultaneously with the decedent's catastrophic death, the property no longer existed for purposes of ademption. Appellant does not address § 2514(18) in its brief.