**In re Estate of Bates**

C.P. of Monroe County, No. 127 O.C. 2012.

*Elizabeth Benisnger Weeks*, for executor Frank M. Brown, for plaintiff.
*Mary C. Kenney*, for defendant.

WILLIAMSON, *J.*, February 6, 2013—This matter comes before this court on the objections to the first and final account of Frank M. Bates, executor of the estate of Jack H. Bates, brought by the Commonwealth of Pennsylvania, through the Office of Attorney General, acting as *parens patriae* for charitable beneficiaries under the Will. A hearing was scheduled for October 16, 2012, and continued once at the request of counsel for the executor, and once at the request of counsel for the Commonwealth. Hearing was held December 18, 2013. We are now ready to rule on the objections.

Jack H. Bates ("decedent") died February 10, 2008. His death was the result of an arson at his real property that was started by his caregiver. The decedent's wife predeceased him by four (4) years. The decedent had no children.

Approximately two (2) years after his wife's death, the decedent had a new Will drafted which he signed on December 4, 2006. The Will set forth certain specific bequests including "cash bequests" under clause 4. The Will then provided for charitable bequests through the establishment of "scholarships" under clause 5 of the

Will. The residue of the estate was devised in clause 6 to "... such organization or organizations as are described in Sections 170(c), 170(b)(1)A, 2055 (a) and 2522 (a) of the Internal Revenue Code of 1986, as amended from time to time, or in corresponding provisions of any successor thereto, as my executor may select." The Will stated that "[s]uch distributions shall be in such amounts and such proportions as my executor shall determine."

The Will also provided at clause 8, "death taxes", that "[a]ll taxes (and interest and penalties thereon) imposed as a result of my death upon any property passing under my Will and upon proceeds of insurance on my life, but not otherwise, shall be paid out of my residuary estate." At clause 11 of the Will, the decedent appointed Frank M. Brown as executor.

The following language at clause 2 of the Will regarding tangible personal property is also significant:

"B. I give all my remaining tangible personal property owned by me at my death to those individuals who survive me by thirty days who are designated on a list or memorandum signed by me which refers to this Will or is found with a copy thereof, the items listed beside their names. If no such list is found within thirty days of my death, it shall be presumed that no such list exists. Any tangible personal property not so listed shall be distributed at the sole discretion of my executor, and any tangible personal property not so distributed shall be sold by my executor, and the proceeds thereof shall

become a part of the residue of my estate."

Finally, the decedent's Will set forth the following specific bequest to Frank M. Brown under clause 4, "cash bequests", Item L:

"L. The sum of Two Hundred Thousand ($200,000.00) Dollars to Frank M. Brown provided he survives me by a period of thirty (30) days. I have named Frank M. Brown as beneficiary of two life insurance policies, and I direct that the sums paid under these policies, as well as any other monies paid directly to Frank M. Brown from whatever source as a result of my death, be deducted from this bequest, and the actual cash amount paid to him under this bequest be the sum required to make a total distribution to the said Frank M. Brown of $200,000.00, taking into account the other monies paid directly to him."

As noted, Frank M. Brown, is both a listed beneficiary and an executor under the Will. The executor is a licensed certified public accountant with an accounting office in Stroudsburg, Pennsylvania. The executor was also a family friend of the decedent, and helped the decedent with various matters during the decedent's lifetime.

The executor testified that no written list of the decedent as to distribution of personal property was ever found. The fire that caused the decedent's death also destroyed items of personal property at the decedent's residence. The only personal property salvaged from the fire were coins and firearms belonging to the decedent. The decedent also had

a 2004 Lincoln automobile that was not damaged.

As a result of the fire, the estate sought and obtained an insurance settlement of $160,000 for the loss of decedent's life. The estate sought and obtained $90,138.36 in insurance proceeds for the loss of personal property damaged in the fire. The estate also sought and received $81,209.59, $18,700, $50,000 and $70,040.47 in insurance proceeds for the value of the damages sustained to the decedent's dwelling as a result of the fire.

The executor, as a beneficiary of the estate, received $103,628.39 from the decedent's death from the specific bequest. This amount was the balance due him after the offset called for in the specific bequest in decedent's Will under clause Four, Item L.[1] The executor also received the decedent's 2004 Lincoln automobile, coins, firearms, a $2,000 bequest to place flowers on the graves of Hyland and Ann Metz, and the insurance proceeds from the loss of personal property. The total value of all probate and non-probate assets passing to the executor as beneficiary was $315,118.88.

The Commonwealth filed objections to the first and final account of the executor. The Commonwealth objected to the following:

1. The executor, as beneficiary, receiving distributions from the estate in excess of $200,000;

---

1. The executor was a named beneficiary on two (2) credit union accounts and two (2) life insurance policies for a total of $96,371.61. Subtracting this amount from the $200,000 bequest as required by the Will left a balance for distribution of $103,628.39.

2. The executor's commission of $61,656.05 because of breach of fiduciary duty;

3. The payment of $122,652.97 in inheritance tax on non-probate assets;

4. Transfer of the Ness Road real estate for $30,000. (This objection was withdrawn at time of hearing and is moot).

## I. Claim Of Excess Distributions

As cited by the parties, it is a cardinal rule that a will is to be construed according to the intent of the testator. *Hamilton Estate*, 454 Pa. 495, 312 A.2d 373 (1973). The Superior Court has set forth the standard for interpretation of wills as follows:

"The Testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail. In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and, if ambiguity exists, on the circumstances under which the will was executed, and only if the testator's intent remains uncertain may a court then resort to the general rules of construction. The words of a will are not to be viewed in a vacuum but rather as a part of an overall testamentary plan." *In Re: Estate of Rider*, 711 A.2d 1018 (Pa. Super. 1998).

Furthermore, every word and clause in a will must be given effect. *Houston Estate*, 491 Pa. 339, 421 A.2d 166 (1980). Therefore, all clauses of decedent's Will must be

read in conjunction with each other.

Here, Frank M. Brown was to receive a specific "cash bequest" under clause Four, Item L. of $200,000, less proceeds of two life insurance policies, and "any other monies paid directly to Frank M. Brown from whatever source as a result of my death..." The executor received this specific bequest from the estate as set forth in the account. The total paid under the bequest was calculated and paid as set forth in clause Four, Item L.

The second clause, Item B, as cited herein, left tangible personal property pursuant to any written memorandum left by the decedent, and if none, then to be distributed at the sole discretion of the executor. There was no separate memorandum of the decedent that was discovered. Therefore, the executor had sole discretion pursuant to the second clause, Item B to distribute personal property. He then distributed the personal property not destroyed by the fire to himself per his sole and absolute discretion. He did the same with the Lincoln automobile. Finally, he did the same with the insurance proceeds on the personal property destroyed by the fire.

The miscellaneous personal property and the Lincoln automobile were items of personal property the executor had sole discretion to distribute, if he chose to do so. Otherwise, personal property was to be sold. The insurance proceeds for the destroyed personal property was also retained by the executor. We are not convinced that the executor's actions, in doing this, constituted any

prohibited self-dealing. Prohibited self-dealing occurs when a fiduciary had a personal interest in a matter of such a substantial nature that it may have affected his judgment in a material way. *In re Estate of Noonan*, 361 Pa. 26, 63 A.2d 80 (1949).

Here, the executor was given the sole and absolute authority to distribute personal property as he saw fit. The executor had discussed aspects of the decedent's Will with the decedent, including distribution of personal property, prior to the signing of the Will. There was no contrary intent evidenced at the hearing or in the plain language of decedent's Will. If the decedent was concerned who the executor would distribute personal property to, he would have so stated in the Will, or by separate memorandum, or he would not have given the executor the absolute discretion per the language of the Will. As there was no evidence of coercion or undue influence in the drafting of decedent's Will, we are constrained to the plain language of the Will. As such, the executor could distribute personal property to anyone. Therefore, there was no prohibited self-dealing in distributing personal property to himself.

The insurance proceeds retained by the executor in lieu of the personal property destroyed in the fire, was also allowed under the Will. The Will stated the executor could distribute all tangible personal property at his sole discretion. The probate code at §2514 provides as follows:

"(18) Nonademption; balance.-A devisee or legatee

of property specifically devised or bequeathed has the right to any of that property which the testator still owned at his death and...;

(iii) any proceeds unpaid at the testator's death on fire or casualty insurance on the property;..."

20 Pa.C.S.A.§2514 (18).

A devisee or legatee is entitled to the insurance proceeds of personal property or other loss from a fire or other accident, resulting in the loss of that property. *See In re: Estate of Henry K. Sagel, Deceased,* 2006 Pa. Super. 134, 901 A.2d 538 (Pa. Super. 2006); *Humphrey's Estate,* 21 Fid. Reptr. 509 (1971). Here, the executor, who had sole discretion to distribute personal property, distributed the insurance proceeds of the personal property lost in the fire. Under the probate code, these proceeds were to be distributed in the same manner as the personal property that was destroyed. The executor had sole discretion in distributing personal property, and he chose to distribute it to himself. Therefore, the executor's actions conformed with the probate code.

The Commonwealth contends the insurance proceeds retained by the executor in lieu of the personal property destroyed in the fire, and the other items of personal property not destroyed, should count against the $200,000 total "cash bequest" to the executor. However, the Commonwealth fails to take into account that the distributions in question arise out of different sections of decedent's Will. The second clause, Item B, specifically

devised remaining tangible personal property, other than the 1978 Cadillac, in a manner of distribution as the executor so desired. Clause Four, Item L of the Will, dealt with a specific "cash bequest" from the estate. The two clauses are separate and distinct bequests under the Will. Thus, one cannot count against the other absent language to the contrary.

Under the clause Four, Item L, Frank M. Brown was to receive the sum of $200,000. The Will directs that the sums paid under the two life insurance proceeds to Frank M. Brown, "...as well as any other monies paid directly to Frank M. Brown from whatever source *as a result of my death,* be deducted from this bequest, and the actual cash amount paid to him *under this bequest* be the sum required to make a total distribution to the said Frank M. Brown of $200,000, taking into account the other monies paid directly to him." (emphasis added).

The language of the Will clearly sets forth monies received from a source *as a result of my death.* Here, the insurance proceeds were not paid as a result of the decedent's death; rather, they were paid as a result of a fire that destroyed personal property that would have been distributed under a separate clause of the Will. The decedent died as a result of the fire, but the death itself did not create the insurance payment for the personal property lost.

Furthermore, there is no limiting language in the Will that would prohibit the executor from receiving the

personal property under the second clause of the Will, in addition to the "cash bequest" set forth in the Fourth clause of the Will. In fact, the Fourth clause, Item L, states that the actual cash amount paid *under this bequest* be the sum calculated therein. This clearly sets forth the procedure for determining the amount to be paid under the Fourth clause only, and left open the ability of the executor to be a beneficiary under other bequests in the Will. The insurance proceeds and personal property were payable under a separate bequest. Therefore, the distribution of personal property was not meant to count as a reduction to the specific bequest made in the Fourth clause, Item L.

## II. Inheritance Tax Paid on Non-Probate Assets

The Commonwealth seeks a surcharge against the executor for inheritance taxes paid on non-probate assets. The executor received $20,776.28 as named beneficiary, on accounts owed by the decedent at time of death. These were non-probate assets. However, this amount was part of the reduction to the specific bequest to the executor as beneficiary under the Will at clause Four, Item L. By the terms of the Will, these assets, passing in full to the executor at decedent's death, were a part of the $200,000 specific bequest. Had the executor not received these funds, he would have received additional funds from the estate, all of which were probate assets. As the estate was responsible for all inheritance tax on assets passing by the estate, any funds comprising a portion of a specific bequest from the estate would have inheritance tax paid by the estate. The decedent's intent to include the non-

probate assets received by the executor in the specific bequest of the Fourth clause of the Will, evidences an intent that those assets be a portion of the $200,000 specific bequest. As such, the decedent intended the $3,116.44 for inheritance tax due on the non-probate accounts be paid by the estate.

The Commonwealth also seeks to surcharge the executor for $16,944.63 in inheritance tax paid on the alleged excess distribution of $112,964.24 in personal property assets to the executor as beneficiary. This included the value of the personal property that was not lost in the fire, the 2004 Lincoln automobile, and the insurance proceeds paid for the value of the personal property destroyed in the fire. We have already found that the executor properly distributed these estate assets to himself in accordance with the provisions of the Will. These were estate assets and the Will provided for payment of inheritance tax of all estate assets from the residue of the estate. Therefore, no surcharge will be made.

### III. Executor's Commission

The executor received a commission for duties rendered to the estate in the amount of $61,656.05. The Commonwealth argues such compensation was not reasonable. The Commonwealth also alleges that the executor breached his fiduciary duty in distributing personal property to himself. However, as we previously noted, the executor was within his right to do so under the terms of the Will. Therefore, there will be no deduction for

breach of fiduciary duty.

In deciding whether or not the commission charged was reasonable, we look to the total circumstances of administering this estate. The executor testified he spent considerable time administering the estate. He valued his time at $100 per hour, considering the complexities involved and his experience and position as a certified public accountant. The executor was a close friend of the decedent, and provided assistance to the decedent during his lifetime when needed. Clearly, the decedent intended Mr. Brown to act as his executor and carry out the terms of his Will, including the good intentions of charitable giving. The executor made arrangements for scholarship funds to be established pursuant to specific bequests. He also researched other charities, and determined which ones should receive a portion of the residuary estate per his knowledge of the decedent's wishes.

The executor also had to handle various insurance matters in settling the estate. There was a wrongful death and survival action filed, which netted the estate $160,000. The executor filed, negotiated and settled the insurance claims for loss of personal property and the decedent's home. There were four (4) distributions alone negotiated and received by the estate, and distributed to the beneficiary, Robert Early, for the loss of the house. The decedent had arranged distribution of twelve specific "cash bequests", some of which involved finding someone to carry out the wishes of the decedent to place flowers at various grave sites. All of those matters required a lot of time on the

part of the executor, and all were very important to the successful administration of the estate.

The gross estate value at decedent's death was $2,028,690.72 per the first and final account. The standard for determining whether a commission was properly charged is whether or not it was reasonable. *See* 20 Pa. C.S.A. § 3537; *Reed Estate*, 462 Pa. 336 (1975). It is a common practice to adopt the fee schedule set forth in *Johnson Estate*, 4 Fiduc. Reptr. 2d 6 (O.C. Chester Cty. 1983) for setting an executor's commission. However, we note that such guidelines are not the guidelines of the attorney general's office and such a commission schedule has been rejected where objections were made by the Commonwealth on behalf of charitable beneficiaries. *See Preston Estate*, 385 Pa. Super. 48, 560 A.2d 160 (1989). In such instances, the courts should review the overall reasonableness of the fee as set forth in *Reed*, supra.

Here, the executor's commission of $61,656.05 was calculated on a percentage basis similar to the *Johnson Estate*, schedule. We find that the commission charged by the executor in this case was reasonable. We find the time necessary to administer the Estate, the various undertakings to preserve assets of the estate, obtain insurance settlements, pursue litigation, locate beneficiaries, make arrangements per the terms of the Will, distribute assets to numerous beneficiaries, establish scholarships and research and select charities, was out of the ordinary. The executor had to spend a great deal of time doing this, and as a certified public accountant, had to use his expertise in managing

and accounting assets. Considering the size of the estate, the complexities involved, the time required, and the numerous bequests to manage, the executor's commission as charged was reasonable.

For these reasons, we issue the following order:

## ORDER

And now, February 6, 2013, the objections of the Commonwealth of Pennsylvania by the office of the attorney general, to the first and final account of Frank M. Brown, executor of the estate of Jack H. Bates, are denied.