J-A23014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:   ESTATE OF ELIZABETH J. RODGERS, Deceased ELIZABETH J. RODGERS, Irrevocable Trust,  ELIZABETH J. RODGERS, Revocable Trust, | : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  RONALD S. JONES AND JONES & CWALINA, LLP, | : : : | |
| Appellants | : | No. 1457 WDA 2014 |

Appeal from the Order entered on August 7, 2014,
in the Court of Common Pleas of Westmoreland County,
Orphans' Court Division, No(s):  65-09-250;
65-10-2409; 65-11-1301

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED OCTOBER 28, 2015**

Ronald S. Jones and Jones & Cwalina, LLP (collectively "Jones"), appeal from the Order dated August 7, 2014, denying Jones's Exceptions to the Order dated March 27, 2014, which sustained the objection to the payment of attorney fees from the Estate of Elizabeth J. Rodgers ("the Estate").  We affirm.

Elizabeth J. Rodgers ("Rodgers") died on January 19, 2009, leaving an Estate in excess of $2 million, which included liquid assets in a Family Limited Partnership business, and a 50% interest in a funeral home business.  Rodgers did not have any children.  Mark D. Bradley ("Bradley")

was named the Executor of the Estate, Successor Trustee of the Revocable and Irrevocable Trusts, and Liquidator of the Family Limited Partnership. Bradley engaged Jones to represent the Estate, trusts, and partnership.[1] Jones made a claim for attorney fees, for Estate administration and litigation matters, in the amount of $118,000.

Gregory V. Rodgers ("Gregory Rodgers"), a beneficiary of the Estate, filed an Objection to various accounts filed by Bradley, including the payment of any fees to Jones. A hearing was held, wherein Gregory Rodgers presented evidence that the fees should have totaled only $17,000. The Orphans' Court determined that the fees should be returned and held in escrow until proper fees could be determined. On March 27, 2014, the Orphans' Court issued an Order sustaining the Objection to the payment of attorney fees in the amount of $118,000, and stating that the fees shall be returned to the Estate, and that the fees were the personal responsibility of Bradley.[2] Jones filed Exceptions to the Order. The Orphans' Court issued an Order denying the Exceptions on August 7, 2014. Jones filed a timely Notice

---

[1] Jones had previously represented Rodgers in preparing the Estate plan in 1996. Jones suggested that Rodgers make annual tax-free gifts to her Irrevocable Trust. Further, Rodgers assigned approximately $2 million to Jones to be managed through the firm's advisory group, which utilized Charles Schwab.

[2] The Orphans' Court did not specify the amount of attorney fees due to Jones.

- 2 -

J-A23014-15

of Appeal.[3]

On appeal, Jones raises the following questions for our review:

1. Did the [Orphans'] Court incorrectly conclude that the efforts of [Jones] were of little value and that the Estate Plan was too complex and unnecessary, thereby completely ignoring the Federal Estate and Pennsylvania Inheritance Taxes and results obtained?

2. Did the [Orphans'] Court error in finding that [Jones] knew that the assets in the Family Limited Partnership were taxable for inheritance tax purposes due to the expenditures made for [] Rodgers' home nursing care and that the inquiries made by the Department of Revenue were occasioned by inadequate legal services?

3. Did the [Orphans'] Court error in finding that [Jones] failed to proceed with the administration of the [E]state[] in a timely manner and that the accountings were incompetently prepared?

4. Did the [Orphans'] Court error in finding that the legal services provided to the Estate were not for the benefit of the [E]state or the beneficiaries in interest but that the legal services were designed to advance the interest of [] Bradley to the detriment of the other beneficiaries and created the legal chaos that resulted in the excess fees paid for by all parties and that the conduct of Jones resulted in an enormous amount of litigation?

---

[3] We note that under Pa.R.A.P. 342(a)(5), an appeal may be taken as of right from "[a]n order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship[.]" Pa.R.A.P. 342(a)(5); **see also** Pa.R.A.P. 342, cmt. (stating that "an appealable Orphans' Court order concerning the status of individuals or entities means an order determining if an individual or entity is a fiduciary, beneficiary or creditor, such as an order determining if the alleged creditor has a valid claim against the estate"). The Order in question denied Jones's claim for fees from the Estate and determined that Jones does not have a claim against the Estate. Thus, the appeal is properly before us. **See** Pa.R.A.P. 342(a); **see also** Pa.O.C. 7.1(a).

- 3 -

5. Did the [Orphans'] Court error in finding that all litigation initiated by [] Bradley was occasioned by the improper conduct and inadequate legal services of [Jones]?

6. Did the [Orphans'] Court error in finding that the fees incurred by the [E]state to correct the work of [Jones] exceed any amount that could be billed by them under the percentage fee calculated pursuant to the Johnson Estate case?

7. Did the [Orphans'] Court error in finding that there is no fee agreement to allow a fee to be charged for litigation services and that [Jones] cannot bill on litigation time based on an hourly rate?

Brief for Appellant at 19-20.

Our standard of review of Orphans' Court decisions is as follows:

The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that [the] Orphans' Court has derived from those facts.

*In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa. Super. 2004) (citation omitted).

"[A]ttorney's fees in an estate are based on the reasonable value of the service actually rendered." *In re Estate of Rees*, 625 A.2d 1203, 1206 (Pa. Super. 1993) (citations omitted). "Attorneys … seeking compensation

- 4 -

from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Id.* The Orphans' Court has discretion to determine the reasonableness of an attorney's compensation. *Id.*

> What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*In re Larocca Estate*, 246 A.2d 337, 339 (Pa. 1968) (citations omitted).

We address Jones's first two claims together. Jones contends that the Orphans' Court erred in finding that their services in establishing an Estate plan for Rodgers provided little or no value to the Estate. Brief for Appellant at 25, 27. Jones argues that Rodgers desired a more sophisticated plan to minimize death taxes and probate. *Id.* at 25. Jones argues the Orphans' Court failed to comprehend the Estate plan in light of evolving tax laws. *Id.*; *see also* Reply Brief for Appellant at 2, 3. Jones contends that by converting the General Partnership funeral home business to a Family Limited Term Partnership, the Estate realized an inheritance tax savings of $30,000. Brief for Appellant at 26. Jones also argues that the firm provided

value to the Estate, because by giving away 87% of her Investment Partnership, Rodgers avoided inheritance taxes, in addition to achieving $400,000 of investment gain. *Id.* at 26, 27; *see also* Reply Brief for Appellant at 2, 3. Jones argues that the business interests were reviewed by the Department of Revenue not because of inadequacies, but because the Department of Revenue routinely audits valuations of business interests. Brief for Appellant at 28-29.

Here, the Orphans' Court set forth the relevant law and determined that Jones's claims are without merit. *See* Orphans' Court Opinion, 3/27/14, at 4; *see also id.* at 5 (wherein the Orphans' Court discusses Jones's argument relating to the complexity of the Estate). The Orphans' Court's findings are supported by competent evidence and its legal conclusions are sound. *In re Estate of Cherwinski*, 856 A.2d at 167. Thus, we adopt the sound reasoning of the Orphans' Court for the purpose of this appeal. *See* Orphans' Court Opinion, 3/27/14, at 4, 5.

In the third claim, Jones asserts that the administration of the Estate was complex due to the various legal entities comprising the Estate, each with its own issues. Brief for Appellant at 29-30. Jones claims that delay occurred in order to obtain certified appraisals and to attempt to settle a

dispute among beneficiaries over the funeral home capital accounts and ownership interests. *Id.* at 30.[4]

The Orphans' Court addressed Jones's third claim and determined it is without merit. *See* Orphans' Court Opinion, 3/27/14, at 5. The Orphans' Court's findings are supported by the record, and we adopt its sound reasoning for the purpose of this appeal. *See id.*

We address Jones's next three claims together. Jones contends that the Orphans' Court erred in finding that the legal services were not provided for the benefit of the Estate, but rather, for Bradley's interest, to the detriment of the other beneficiaries. Brief for Appellant at 31-34. Jones argues that the services were performed on behalf of all beneficiaries, in accordance with their beneficial interests. *Id.* at 31, 32. Jones asserts that the litigation did not create legal chaos, but instead determined the correct values and ownership interests in the business and investment partnerships. *Id.* at 32. Jones points out that all corrective counsel fees have been paid by Jones, or Jones had reached an agreement with beneficiaries' counsel to have them paid. *Id.* at 32, 33-34. Jones claims that he cannot be held accountable for Bradley's actions as executor. *Id.* at 32-33. Jones argues

---

[4] We note that Jones fails to cite to any pertinent legal authority to support his claim. *See* Pa.R.A.P. 2119(a); *In re Estate of Sagal*, 901 A.2d 538, 541 (Pa. Super. 2006).

he never personally represented Bradley, and that any legal actions brought by Bradley were through separate and independent counsel. *Id.* at 33, 34.[5]

Here, the Orphans' Court set forth the relevant law, addressed Jones's claims, and determined they are without merit. *See* Orphans' Court Opinion, 3/27/14, at 5-6, 7. The Orphans' Court's findings are supported by the record, and we adopt the sound reasoning of the Orphans' Court for the purpose of this appeal. *See id.*

In his final claim, Jones contends that the Orphans' Court erred in finding that there was no fee agreement to allow a fee to be charged for litigation services, and that the firm could not bill this time at an hourly rate. Brief for Appellant at 34. Jones argues he remitted an engagement letter to Bradley detailing how the firm would be charging for its services regarding the administration of the Estate. *Id.* at 34-35. Jones explains that the letter detailed the modified guideline fee under *In re Johnson Estate*, 4 Fid.Rep.2d 6 (O.C. Chest. 1993), which would include all assets, regardless of class, under the probate fee calculation. Brief for Appellant at 34-35. Jones points out that this letter specifically excluded litigation matters, which were handled on an hourly billing basis. *Id.* at 34. Jones claims he notified Bradley in writing that, in light of the litigation and the Orphans' Court mandate that fees be reasonable, the firm would be keeping detailed time records and billing the Estate $150.00 per hour for out of court time and

---

[5] Again, Jones fails to cite to any pertinent legal authority to support his claims. *See* Pa.R.A.P. 2119(a); *In re Estate of Sagel*, 901 A.2d at 541.

$200 per hour for court appearances.  *Id.* at 34, 35.  Jones argues that Bradley's failure to sign and remit the letter back to Jones does not negate the Estate's obligation to pay for litigation matters.  *Id.* at 34.

Here, the Orphans' Court set forth the relevant law and determined that Jones's claims are without merit.  *See* Orphans' Court Opinion, 3/27/14, at 6, 7.  We adopt the sound reasoning of the Orphans' Court for the purpose of this appeal.  *See id.*

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2015

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
PENNSYLVANIA
ORPHAN'S COURT DIVISION

IN RE: ESTATE OF ELIZABETH J. RODGERS,        NO.65-09-0250

IN RE: ELIZABETH J. RODGERS FAMILY
LIMITED PARTNERSHIP,                          NO.65-10-2409

IN RE: ELIZABETH J. RODGERS IRREVOCABLE
TRUST,                                     NO.65-10-2409

IN RE: ELIZABETH J. RODGERS TRUST,       NO.65-11-1301

**Original filed in 65-09-250**

DECISION AND ORDER

This matter is before me as the result of Objections filed by Gregory V. Rodgers to

various accounts filed by Mark D. Bradley in his capacity as Executor of the Estate of Elizabeth

J. Rodgers, and as Successor Trustee of the Revocable and Irrevocable Trusts of Elizabeth J.

Rodgers, and as Liquidator of the Elizabeth J. Rodgers Family Limited Partnership. In the Brief

in Support of Objections to Accounts the Objector, Gregory V. Rodgers, has addressed the

following matters set forth in the accountings:

    1. An unknown fee in the amount of $1,397.88 paid form the Revocable Trust.

    2. Allegedly excessive management fee charged by Mark D. Bradley in the amount of

       $50,000.00.

    3. Attorneys fees paid to the law firms of Eckert Seamans and Fox Rothschild and to

       Richard Kelly, Esq. for certain litigation in the amount of $62,775.72.

    4. Fee paid to Stenger, Bies & Company in the amount of $5,000.00.

    5. Attorneys fees charged by Jones & Cwalina in the amount of $118,000.00

1

With regard to the unknown fee in the amount of $1,397.88 by from the Revocable Trust, the objection is sustained because there is no explanation in the accounting which would enable me to determine the service for which this amount was paid. Said amount shall be directed to be returned to the Revocable Trust.

With regard to the allegedly excessive management fee set forth in the accounting for the Family Limited Partnership, the objection shall be sustained and the management fee shall be directed to be returned by Mr. Bradley to the Family Limited Partnership Account. The Family Limited Partnership is merely a stock portfolio that was managed by Charles Schwab. Charles Schwab charged a management fee for said management. There is no indication of what, if any, efforts were expended by Mark D. Bradley in the managing of the stock portfolio. In fact Mr. Bradley failed to make the required distributions from the fund in a timely manner and litigation was required to have Mr. Bradley make the required distributions. Further, Mr. Bradley has failed to describe in sufficient detail what he had done as the manager of the funeral home, as the manager of the Family Limited Partnership, as Executor of the Estate of Elizabeth J. Rodgers, or as Trustee of the Irrevocable Trust or as Co-Trustee of the Revocable Trust, that would justify the payment of the management fee requested. Furthermore, this fee was paid from only one source, that being the Family Limited Partnership. Given that there has been no description of the work done in the nature of management of the Family Limited Partnership, there is no basis upon which I can declare that the fee is reasonable.

2

However, there may be a fee charged by Mr. Bradley that may be characterized as an executor's fee to be paid to Mr. Bradley for his position as Executor of the Estate of Elizabeth J. Rodgers. The appropriate fee for an executor of this estate would be $17,000.00. Whether this should be paid to Mr. Bradley will be discussed later in this Decision.

With regard to the attorneys' fees paid to the law firms of Eckert Seamans and Fox Rothschild and to Richard Kelly, Esq. for certain litigation in the amount of $62,775.72, I find that the objections should be sustained and these fees are the personal responsibility of Mark D. Bradley. Mark argues that these fees should be approved because he and the other beneficiaries of the Elizabeth J. Rodgers Estate did not have an adverse interest because he was merely trying to increase the value of the Estate by his acquiring legal representation by these firms and lawyer. There is absolutely no explanation concerning the services that the firms of Fox Rothschild or Eckert Seamans performed for Mr. Bradley. I have already determined in my Decision and Order dated May 20, 2013 that the legal representation by Richard Kelly, Esq. in the litigation he pursued on behalf of Mr. Bradley was for the purpose of advancing Mr. Bradley's personal interests as a beneficiary and not as the Executor of the Estate. All of the actions pursued by the law firms of Eckert Seamans and Fox Rothschild and by Attorney Kelly were designed to increase the value of the funeral home interest. This would be of direct benefit to Mr. Bradley and would reduce the distributive share of all other beneficiaries. Based upon the evidence that I have available to review, it appears that the law firms of Eckert Seamans and Fox Rothschild were hired by Mr. Bradley to pursue the same matters that were ultimately pursued by Attorney Kelly on behalf of Mr. Bradley. Therefore, for the reasons set forth in my Decision

3

of May 20, 2013, regarding Attorney Kelly's fees, the fees of Eckert Seamans and Fox Rothschild are also disallowed and are to be the personal responsibility of Mr. Bradley.

With regard to the expense of $5,000.00 paid out of the Family Partnership as an accountant fee paid to Stenger, Bies & Company for its services as an arbitrator, the objection will be overruled. I cannot find with any certainty that the arbitrator acted in a manner other than as an arbitrator engaged to resolve the issues presented to the arbitration panel.

I will now examine the fees being claimed for the services of Attorney Ronald Jones and the firm of Jones and Cwalina. As was set forth in the case of LaRocca Estate, it is with the discretion of the court to determine whether a fee being charged is a reasonable fee. When the value of the efforts of the firm of Jones & Cwalina is examined it appears that the efforts were of little value. The complexity of the estate plan developed by Jones & Cwalina was unnecessary. The liquid assets in the estate had to be used by the decedent during her lifetime and therefore this retention of control over these assets during her lifetime undermined the need for such a complex estate plan. The assets in the Family Limited Partnership were known to Jones & Cwalina to be taxable for inheritance tax purposes, yet the firm reported them as outside the taxable estate. The firm reported in the return that the funds had been transferred to the Family Limited Partnership but did not disclose the same as required on Schedule G of the return.

Although Jones & Cwalina had to answer inquiries from the Department of Revenue, these inquiries were occasioned by the inadequate legal services it provided in the preparation of the return. The litigation instigated by Mark Bradley was occasioned by the improper conduct

4

and inadequate legal services of Jones and Cwalina; particularly those of Attorney Ronald Jones when rendering legal services to Elizabeth Rodgers.

Jones and Cwalina, on behalf of Mark Bradley failed to proceed with the administration of these estates in a timely manner. Furthermore, Jones & Cwalina did not perform all of the legal work necessary in these estates or on behalf of Mark Bradley. The legal services that were rendered were not of a benefit to the estates or to those persons or entities interested in the estates.

The complexity of the administration of these estates, which has been argued by Jones & Cwalina to justify the exorbitant fees, was the creation of Jones & Cwalina as the result of an estate plan that was badly suited for the client and badly, and, on occasion, improperly, implemented by the very law firm requesting the exorbitant fees.

A review of the facts pertaining to the administration of these estates has established to my satisfaction that the administration was pursued in a way that was designed to advance the interests of Mark Bradley to the detriment of all other beneficiaries. It became clear, as a result of the evidence presented, that Attorney Ronald Jones encouraged, aided and abetted the efforts of Mr. Bradley to advance his own interests over those of all others. This conduct by Attorney Jones resulted, ultimately, in an enormous amount of unnecessary litigation. If handled properly the actual administration of these estates should have been rather simple. The Estate of Elizabeth Rodgers consisted of liquid assets in the Family Limited Partnership held in two Charles Schwab

5

accounts, a specifically devised and bequeathed funeral home business and two funeral home sites.

The firm of Jones & Cwalina and Attorney Ronald Jones has made a claim for attorneys' fees in the amount of $118,000.00. The law firm contends that it is able to charge for its services in the administration of these estates on an hourly basis and not on a percentage basis. It further contends that they can bill for litigation matters on an hourly basis. However, the engagement letter between the firm and Mr. Bradley did not provide for payment of a fee based upon an hourly rate for any services rendered by Jones & Cwalina. It merely provided for a fee to be in accordance with a modified guideline fee as ser forth in the case of the Johnson Estate, 4 Fid. Rep.2d 6 (O.C. Chest. 1993). There is never set forth an hourly rate to be charged for any litigation. Certainly, all non-litigation matters were to be billed on a percentage basis.

As for the litigation matters pursued by Jones & Cwalina on behalf of Mark Bradley, I have already determined that these actions were taken only for the purpose of advancing the interests of Mark Bradley and were to the detriment of all other beneficiaries. The conduct of Jones & Cwalina on behalf of Mr. Bradley did nothing to properly advance the administration of these estates and did nothing to advance or promote the fiduciary responsibilities entrusted to Mr. Bradley.

The question remains whether Jones & Cwalina should receive the percentage fee as calculated pursuant to the Johnson Estate case. Fees of this nature are to be paid when the services of the attorney are complete and professional. The work performed by Jones & Cwalina

6

had to be revised because the accountings filed were incompetently prepared. The fees incurred by these estates to correct the work of Jones & Cwalina exceed any amount that could be billed by Jones & Cwalina. Therefore, even this fee should not be paid to the firm of Jones & Cwalina.

With regard to the fees charged for litigation service; first of all there is no fee agreement to allow a fee to be charged for such services nor a promise to pay them. Furthermore, the litigation pursued by Jones & Cwalina on behalf of Mark Bradley created the legal chaos that resulted in excessive fees for all parties. Also, as previously stated, certain litigation was also necessary to cause Mr. Bradley to properly administer these estates.

Therefore, I will enter the following Order.

7

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
PENNSYLVANIA
ORPHAN'S COURT DIVISION

IN RE: ESTATE OF ELIZABETH J. RODGERS,           NO.65-09-0250

IN RE: ELIZABETH J. RODGERS FAMILY
LIMITED PARTNERSHIP,                            NO.65-10-2409

IN RE: ELIZABETH J. RODGERS IRREVOCABLE
TRUST,                                            NO.65-10-2409

ORDER

And now this 27th day of March, 2014, in accordance with the foregoing Decision it is hereby Ordered and Decreed as follows:

1. The objection to the "unknown fee" in the amount of $1,397.88 is sustained and the fee is disallowed. If the same has been paid it shall be returned to the proper estate.

2. The objection to the management fee of Mark Bradley is sustained and the management fee of $50,000.00 is disallowed and if the same has been paid it shall be returned to the proper estate.

3. The objection to the attorneys' fees charged by the law firms of Eckert Seamans and Fox Rothschild is sustained and the fess paid shall be returned to the proper estate. These fees are the personal responsibility of Mark Bradley.

4. The objection to the fees paid to Stenger, Bies & Company is overruled.

8

5. The objection to the attorneys' fees charged by the law firm of Jones and Cwalina in the amount of $118,000.00 is sustained and the same shall be returned to the proper estate. Any fees that may be due are the personal responsibility of Mark Bradley.

By the Court:

Attest: