J-A21021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALBERT C. OEHRLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCIA WOOLMAN GOLDSMITH | : | |
| AND EDWIN M. GOLDSMITH, III | : | |
| | : | No. 3144 EDA 2019 |
| Appellants | : | |

Appeal from the Order Entered December 30, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2016-05263

BEFORE:  LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 29, 2020**

Appellants, Marcia Woolman Goldsmith and Edwin M. Goldsmith, III, (the "Goldsmiths") appeal from the December 30, 2019 Judgment in the Montgomery County Court of Common Pleas following a nonjury trial verdict in favor of Appellee, Albert Oehrle.  After careful review, we affirm.

The facts and procedural history are as follows.  In 1994, Appellee, an attorney, represented Mrs. Goldsmith in a domestic relations case.  Mrs. Goldsmith fired him and Mrs. Goldsmith and Appellee litigated a dispute over his legal fees.  On April 19, 2006, the Goldsmiths and Appellee settled that dispute by, *inter alia*, entering into a payment agreement (the "Note").[1] Pursuant to the Note, the Goldsmiths agreed to pay $25,000 to Appellee within

_____

[1] Mrs. and Mr. Goldsmith married toward the end of the domestic relations case, and Mr. Goldsmith joined the Note as part of the settlement.  We refer to Appellants as the "Goldsmiths" throughout.

30 months, and an additional $75,000 plus interest within 60 months. The Goldsmiths secured this obligation by a second mortgage against property they owned.[2] Relevantly, the Settlement Agreement, which the parties memorialized on the record, provided that: "If in fact there's been an act of default, [Appellee] would be entitled, and the documents would provide for him to receive, **reasonable attorney fees for collection matters dating from the date of default**." Settlement Agreement, 4/19/06, at 32 (emphasis added), *see also id.* at 40; Note 11/2/06, at ¶4. The parties agreed that "[t]he [N]ote and the mortgage . . . will contain confession of judgment clauses in the event of default. *Id.* at 30; *see also id.* at 37; Note at ¶ 4.

The Goldsmiths made the first $25,000 payment pursuant to the Note, but defaulted thereafter by failing to make the payment due by November 2, 2011. Thus, on December 6, 2012, Appellee filed at Docket Number 2012-30176 (the "2012 Action") a Complaint in Confession of Judgment seeking $75,000 in principal, $27,375 in interest, and $5,118.75 in attorney fees incurred prior to January 31, 2013.[3] The Goldsmiths filed a Petition to Open or Strike the Confessed Judgment. The trial court denied the Petition to Open or Strike and awarded Appellee $107,493.75. This Court affirmed the Order

---

[2] The parties entered into a settlement in open court on April 19, 2006. The terms under which the Goldsmiths agreed to pay Appellee's fees as set forth on the record were reflected in the Note and the mortgage.

[3] The fees represented the cost of the work Appellee himself performed in preparing the Complaint in Confession of Judgment *pro se*.

denying the Petition to Open or Strike the Confessed Judgment, and our Supreme Court denied the Goldsmiths' Petition for Allowance of Appeal. **See Oehrle v. Goldsmith**, 122 A.3d 1146 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 129 A.3d 1243 (Pa. 2015).

During the pendency of the appellate litigation in the 2012 Action, the Goldsmiths posted a *supersedeas* bond in the amount of $128,992.50 as required by law. On January 22, 2016, following the denial of the Goldsmith's Petition for Allowance of Appeal, Appellee filed a Petition to Direct Payment of Funds Held in Court. On April 26, 2016, the trial court granted Appellee's Petition to Direct Payment of Funds and on May 2, 2016, it entered an Order directing the payment of $128,397.59 to Appellee and the return of the remainder of the bond to the Goldsmiths.

Meanwhile, on March 8, 2016, Appellee commenced the instant action (the "2016 Action") by filing a second Complaint in Confession of Judgment. In the 2016 Action, Appellee sought to collect additional counsel fees expended from January 1, 2013 to early March 2016, in his effort to secure payment on the Note.[4] Appellee had not previously sought any of the attorney fees sought in the instant action, and the Goldsmiths have not reimbursed Appellee for any attorney fees incurred by him since January 1, 2013, which includes the fees incurred by him in litigating the Goldsmiths' attempt to open

---

[4] Appellee confessed judgment of $53,876.69, which included $52,685 in attorney fees and $1,191.69 in litigation costs. Complaint, 3/8/16, at ¶ 9.

or strike the judgment confessed in the 2012 Action and Goldsmiths' subsequent appeals.

On June 24, 2016, the Goldsmiths filed a Petition to Open or Strike the Confessed Judgment asserting that Appellee was not entitled to any additional attorney fees.[5]  On August 1, 2016, Appellee filed an Answer.  On March 23, 2017, the trial court granted the Goldsmiths' Petition to Open or Strike the Confessed Judgment.

On July 27, 2017, the Goldsmiths filed a Motion for Summary Judgment asserting that they were entitled to judgment as a matter of law because: (1) the Note does not provide Appellee with the right to additional attorney fees; (2) even if it did, the Goldsmiths fully satisfied the Note as a matter of law; and (3) Appellee's Complaint was untimely in that Appellee failed to file it within 30 days of the Pennsylvania Supreme Court's Order denying the Goldsmiths' Petition for Allowance of Appeal.  Motion, 7/27/17, at ¶ 17.

On August 25, 2017, Appellee filed a Response to the Goldsmiths' Motion for Summary Judgment and, on October 3, 2017, a Memorandum of Law in Support.  On October 4, 2017, the trial court denied the Goldsmiths' Motion for Summary Judgment.

---

[5] At a hearing on the Petition, the Goldsmiths' counsel conceded that Appellee had the right to file a petition for counsel fees arising from his effort to initially confess judgment under the Note.  N.T. Hearing, 3/23/17, at 5.  However, counsel argued that a Complaint for Confession of Judgment was not the appropriate mechanism for obtaining that relief.  *Id.*

A bench trial commenced on March 5, 2019 at which only Appellee and his counsel, Gregory B. Heller, Esquire, testified.[6]  Appellee and Attorney Heller testified about the long history of the litigation between Appellee and the Goldsmiths and the work performed by Attorney Heller.  Attorney Heller also testified about his education, experience, and hourly rate.  Appellee introduced Attorney Heller's invoices as evidence.  The invoices detail the time spent and work performed from January 31, 2013, to August 22, 2018, as well as various costs incurred in the handling of Appellee's case.  At trial, the Goldsmiths did not challenge the accuracy or reasonableness of any of the entries in Attorney Heller's time records or invoices.

Following consideration of the trial testimony and evidence, and the parties' court-ordered Proposed Findings of Fact and Conclusions of Law, on August 7, 2019, the trial court entered a verdict in favor of Appellee for $88,988.28.[7]

The Goldsmiths' filed a Post-Trial Motion, which the trial court denied. This appeal followed.  Both the Goldsmiths and the trial court have complied with Pa.R.A.P. 1925.

The Goldsmiths raise the following four issues on appeal:

---

[6] Appellee conducted the direct examination of Attorney Heller.

[7] Pursuant to this Court's directive, on December 30, 2019, the Goldsmiths filed a *praecipe* for entry of judgment on the verdict.

1. Did the [c]ourt err below by failing to determine that the statute of limitations on this claim had expired before the Petition for Entry of Judgment by Confession was filed?

2. Did the [c]ourt err by failing to apply the doctrine of *res judicata* to bar this claim, which was an effort to relitigate an issue already decided between these parties?

3. Did the [c]ourt err by awarding damages for legal fees incurred after the Petition was filed because the 2016 Petition was not an action to collect a debt under the terms of the agreement of the parties?

4. Is the damages award an impermissible windfall?

Goldsmiths' Brief at 5-6 (unpaginated) (suggested answers omitted).

**Standard of Review**

Each of the Goldsmiths' issues challenge the trial court's decision to Award Appellee damages. When reviewing a trial court's decision after a nonjury trial, our standard of review is well-established. "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weigh the testimony of each party's witnesses and to decide which are most credible." *Parker Oil Co. v. Mico Petro and Heating Oil, LLC*, 979 A.2d 854, 856 (Pa. Super. 2009) (citation omitted). The trial judge's findings must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we consider the evidence in the light most favorable to the verdict winner." *Id.* (citation omitted).

**Legal Analysis**

**Whether the Action is Time-Barred**

In their first issue, the Goldsmiths aver that, as an action to recover legal fees in connection with a prior litigation, this action is time-barred. Goldsmiths' Brief at 15-18. In support of this claim, the Goldsmiths rely exclusively on *Ness v. York Twp. Bd. of Comm'rs and York Cnty. Bd. of Comm'rs*, 123 A.3d 1166 (Pa. Cmwlth. 2015), a case whose holding is not binding on this Court[8] and involves the award of counsel fees pursuant 42 Pa.C.S. § 2503, a statute not relevant to the instant matter.[9]

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003) (citation omitted). Furthermore, "[w]hen issues are not properly raised and developed in briefs . . . a Court will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted). Accordingly, the Goldsmiths' failure to cite to relevant and controlling case law results in waiver of this issue. *See In re Estate of Sagel*, 901 A.2d 538, 541 (Pa. Super. 2006) ("Failure to cite pertinent authority in support of an argument results in waiver.").

---

[8] Decisions of the Commonwealth Court are not binding on the Superior Court. *Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010).

[9] Section 2503 authorizes the award of counsel fees "as part of the taxable costs of the matter[.]" 42 Pa.C.S. § 2503.

### *Res Judicata*

In their second issue, the Goldsmiths claim that the trial court erred by failing to apply the doctrine of *res judicata* to bar Appellee's claim for attorney fees. Goldsmiths' Brief at 18-20. In support of this claim, they argue that "[t]here is no question that there was a fully litigated proceeding between the parties, at which [Appellee] claimed counsel fees, was awarded them, and did nothing to address the issue of the potential inadequacy of the fees he claimed and was awarded when given plenty of opportunity to do so." *Id.* at 19.

The doctrine of *res judicata* "reflects the refusal of the law to tolerate a multiplicity of litigation." *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1316 (Pa. Super. 1983). The doctrine bars a subsequent action only if both lawsuits contain the following elements in common:

> (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties. Additionally, *res judicata* will bar subsequent claims that could have been litigated in the prior action, but which actually were not[.]

*Robinson Coal Co. v. Goodall*, 72 A.3d 685, 689 (Pa. Super. 2013) (citations and internal punctuation omitted). Moreover, when determining whether *res judicata* precludes a subsequent action, a court may consider "whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action[,] and whether both actions seek compensation for the same damages." *Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 681 (Pa. Super. 1995) (*en banc*) (internal citations and quotation marks omitted).

In addressing this claim, the trial court aptly noted that the "identity of the thing sued upon is not identical." Trial Ct. Op., 11/27/19, at 12. We agree. This Court's review of the record indicates that the claim pursed by Appellee in the 2016 Action are not the same as those pursued by him in the 2012 Action. In the 2012 Action, Appellee confessed judgment upon the Goldsmiths arising from their default under the Note, seeking payment for attorney fees incurred through the filing of the 2012 Action; Appellee did not seek or recover fees for any services performed after January 1, 2013. In contrast, in the 2016 Action, Appellee has sought the reimbursement for attorney fees incurred in litigating the 2012 Action after January 1, 2013. Accordingly, the Goldsmiths' claim that the doctrine of *res judicata* bars Appellee from recovering in the 2016 Action fails.

**Terms of the Note**

In their third issue, the Goldsmiths claim that the trial court erred in awarding Appellee the fees he sought because the awarded fees were "beyond the scope of," and, therefore, not permitted by the Note. Goldsmiths' Brief at 21-24. In particular, they argue that the only fees Appellee was entitled to recover under the Note were those he incurred to collect the initial debt, which debt was extinguished on May 2, 2016. *Id.* at 22-23.

This issue requires this Court to interpret the Note—a contract between the parties. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.***, 916 A.2d 1183, 1188 (Pa. Super. 2007)

(citation omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision." ***Id.*** (citation omitted).

Our Supreme Court has explained that "[t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. ***Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468 (Pa. 2006). "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." ***Id.***

The plain language of the Note and the parties' Settlement Agreement undermines the Goldsmiths' claim that Appellee was not entitled to recover in the instant action. The Note empowers Appellee, "after the occurrence of any event of default," to "appear for judgment, **or a series of judgments** in favor of this [N]ote, together with [reasonable] attorney's fees and record costs[.]" Note at ¶ 4 (emphasis added). It also provides, in relevant part, that "no single exercise . . . shall be deemed to exhaust the power" of the Note, and that "the power shall continue undiminished and it may be exercised from time to time as often as the payee may elect until such time as the payee shall have received payment in full of the debt, interest, **and costs**." ***Id.*** (emphasis added).

As part of the Settlement Agreement, the Goldsmiths also agreed that "[i]f in fact there's been an act of default, [Appellee] would be entitled, and the documents would provide for him to receive, **reasonable attorney fees**

**for collection matters** dating from the date of default."  N.T. Settlement Agreement at 6 (emphasis added).

Thus, following our review of the plain language of the Settlement Agreement and the Note, we conclude that they both permit Appellee to assert a claim for attorney fees incurred in collecting the Goldsmiths' debt.  The instant action did precisely that.  Thus, the Goldsmiths' claim fails as a matter of law.[10]

**Windfall**

In their final issue, the Goldsmiths claim that the trial court's award of attorney fees to Appellee, which were in excess of those he sought in the Complaint in Confession of Judgment, constitutes a windfall to Appellee because Appellee has not paid his counsel's invoices in full.  Goldsmiths' Brief at 24-27.  The Goldsmiths assail the court's award as "highly speculative" and assert that because the statute of limitations has passed for Appellee's counsel to collect on his invoices, requiring the Goldsmiths to pay them in full is "impermissibly punitive" and outside of the terms of the agreement.  ***Id.*** at 24, 26.

An order opening a confessed judgment gives rise to a *de novo* proceeding and confers upon the plaintiff the burden of establishing a *prima*

---

[10] To the extent that the Goldsmiths' argue that Appellee was not entitled to an award of attorney fees arising from collecting the Goldsmiths' underlying debt because the Goldsmiths had fully paid that debt, the Goldsmiths have not developed this argument with citation to any case law.  Accordingly, they have waived it.  ***Estate of Sagel***, 901 A.2d at 541.

*facie* case as if no judgment had been entered. ***Poelcher v. Zink***, 101 A.2d 628, 629 (Pa. 1954). This process gives the defendants the opportunity to assert "any and all defenses he might have asserted had he not been precluded therefrom by the entry of the judgment." ***Id.***

"If a judgment is opened in whole or in part the issues to be tried shall be defined by the complaint if a complaint has been filed, and by the petition, answer and the order of the court opening the judgment. **There shall be no further pleadings**." Pa.R.C.P. 2960 (emphasis added).

Thus, in the instant matter, once the trial court opened the Confessed Judgment, the case proceeded to a nonjury trial where Appellee had the burden of proving his entitlement to the award of attorney fees and the Goldsmiths could assert any and all defenses. Rule 2960 precluded Appellee from filing an amended Complaint after the court opened judgment.

We review an award of attorney's fees for an abuse of discretion, and we will not reverse the award absent a clear abuse of that discretion. ***In re LaRocca's Trust Estate***, 246 A.2d 337, 339 (Pa. 1968). This Court has further explained we may only reverse the trial court's award of attorney fees "where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award." ***Gilmore by Gilmore v. Dondero***, 582 A.2d 1106, 1108 (Pa. Super. 1990).

The Goldsmiths first complain that the trial court erred in awarding damages in excess of the amount Appellee sought in his Complaint in Confession of Judgment.

In his Complaint, Appellee sought a judgment for $53,876.69, representing attorney fees incurred through the date he filed the Complaint in 2016. The trial court explained in its Rule 1925(a) Opinion that it instead awarded damages higher than those initially requested by Appellee because opening the confession of judgment deprived Appellant of the opportunity to amend his Complaint to conform to the actual total ongoing attorney fees incurred in collecting the Goldsmiths' debt. Trial Ct. Op. at 10. The trial court further explained that it fashioned its award based on the damages asserted in the Complaint and the credibility and weight of the evidence presented at trial. *Id. See also id.* at 3-5 (where the trial court set forth the evidence it weighed when making its decision); *id* at 16 ("This court reviewed the bills of [Appellee's] counsel and determined that the time expended and hourly rate was reasonable for an attorney of [Appellee's] counsel's experience."). The competent record evidence supports the trial court's determination. We, therefore, discern no abuse of discretion in the court's award of attorney's fees.

The Goldsmiths also assert that the damages awarded to Appellee constituted a windfall because Appellee had only paid half of the fees invoiced by his counsel and his counsel was barred by the statute of limitations from collecting the other half. The trial court, however, relying on *Rabben v.*

*Steinberg*, 142 A.2d 400, 401 (Pa. Super. 1958), found that the Goldsmiths' claim lacked merit. *See id.* (holding that, in Pennsylvania, "the statute of limitations does not begin to run against the claim on an attorney for conducting a suit until the end of his service" and concluding that an attorney could bring an action against his client for legal fees and costs, even though most of the services and suits were started more than six years before filing the collection action against his client). Therefore, because Attorney Heller's representation of Appellee was ongoing, the trial court concluded that the statute of limitations had not yet begun to run.

Moreover, the trial court found that, even if the statute of limitations had begun to run, Appellee's acknowledgement at trial that he was responsible for paying his counsel in full for the costs of his representation acted as an "admission" of a promise to pay Attorney Heller that tolled the statute of limitations. *See Receiver of Anthracite Trust Co. v. Loughran*, 19 A.2d 61, 62 (Pa. 1941) (explaining that "[a] clear, distinct and unequivocal acknowledgement of a debt is sufficient" to toll the statute of limitations). Therefore, the court concluded that Appellee was entitled to an award attorney fees sufficiently large to satisfy Attorney Heller's invoices. Trial Ct. Op. at 5 (citing N.T., 3/5/19, at 46); *id.* at 16 (citing N.T. at 34, 46)..

We agree with the trial court that its award of attorney fees does not constitute a windfall. The evidence indicated that Appellee was aware of his ongoing obligation to pay in full Attorney Heller's outstanding invoices. The award of a judgment in excess of that initially sought by Appellee in the 2016

Action was not, as characterized by the Goldsmiths, punitive; rather, it was appropriate in light of the costs incurred by Appellee to collect his debt from the Goldsmiths and supported by the credible record evidence. For these reasons, the Goldsmiths' final claim also fails.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/20